**Aurea JIMENEZ–TORRES de PANEPINTO, Plaintiff, Appellant,**

v.

**Jose M. SALDANA, etc., et al., Defendants, Appellees.**

No. 86–1801.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1987.

Decided Dec. 2, 1987.

Jose Fernandez–Sein with whom Maria H. Sandoval and Law Offices of Nachman & Fernandez–Sein, Santurce, P.R., were on brief, for plaintiff, appellant.

Ruben Nigaglioni with whom James D. Noel, III and Ledesma, Palou & Miranda, Hato Rey, P.R., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, and BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Aurea Jiménez Torres de Panepinto, brought this action in the district court under 42 U.S.C. § 1983 (1982) seeking injunctive, compensatory and punitive relief. She alleged that she was removed from her position as director of the library at the Medical Science Campus of the University of Puerto Rico without procedural due process and for political reasons. After a consolidated hearing on the preliminary and permanent injunction, the court, acting pursuant to defendants' motion under Fed. R.Civ.P. 41(b), dismissed the complaint. The court rejected appellant's procedural due process claims on the ground that she had failed to demonstrate that she had a protected property right in continued employment as director of the library. The court dismissed the political discrimination claim because appellant had failed to produce evidence indicating that loss of the director's position resulted from political affiliation.

Appellant argues that the district court's judgment dismissing her due process claim should be reversed because the court erred when concluding that under state law plaintiff did not have a property right in continued employment as director of the library.[1] We affirm.

## I. FACTS

Personnel positions at the University of Puerto Rico are classified as either teaching or non-teaching. Hiring and promotion, and the rights and duties of each employee, depend on this classification.

A non-teaching position is granted through competitive examinations, requires prior advertising of the existence of a vacancy, and requires written application by those interested in being considered for the position.[2] Non-teaching jobs are further classified in two categories: trust and career. A person who occupies a non-teaching career position might acquire perma-

---

1. Appellant also had appealed from the district court's dismissal of the political discrimination claim, upon the theory that the court's judgment deprived appellant of her constitutional right to a jury trial. However, appellant indicated at argument that she no longer pressed the politi-

cal discrimination claim. Therefore, we do not consider it further.

2. General Regulations of the University of Puerto Rico ("GRUPR") §§ 78–81 (1981).

nent status after completing a provisional period and being evaluated by his or her immediate supervisor.[3]

Teaching or academic personnel include all teachers, researchers, extentionists, and *librarians*.[4] They are selected through a process of consultation [5] and may be granted tenure if they meet certain specific criteria.[6]

Appellant is a librarian with tenure at the University of Puerto Rico. She has received various promotions in rank, including one to librarian II in August 1979 and one to librarian III in July 1985. The position of librarian is classified as a career-teaching position.[7] On March 16, 1981, Dr. Norman Maldonado, at that time Chancellor of the Medical Science Campus, named appellant to be director of the library. Co-defendant José M. Saldaña replaced Maldonado as Chancellor of the Medical Science Campus on October 17, 1985. He named co-defendant Dr. Amalia Martinez Picó as Dean of Academic Affairs in November 1985.

Appellant performed the duties of director of the library until April 30, 1986, when she was notified by Dr. Martinez Picó that these duties had been withdrawn. While acting as director of the library, appellant received her salary as librarian III plus a "bonus" to compensate her for additional work. After being removed from her position as director, appellant was reassigned to perform duties as librarian III. The "bonus" was discontinued.

## II. PROPERTY INTEREST

Appellant's contention that she was denied the procedural due process guaranteed

by the federal Constitution depends, in the first instance, on whether or not she had a property interest in her continued employment as library director. The existence of a property interest in the director's position depends solely on state law.[8] If plaintiff held a property interest under state law, then she could not be discharged without the procedural safeguards which the federal Constitution requires. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–47, 105 S.Ct. 1487, 1491–96, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). After plaintiff-appellant had presented all her evidence, the district court ruled that she had not shown, on the facts and the law, that she had a property right in the library director's position, hence had failed to establish that she had been deprived of property without due process of law.

It is not controverted that appellant has a property right in the position of librarian III, a career position as to which she has obtained tenure. After her director's duties were taken away, she was reinstated as librarian III, and she is currently performing the duties of that position. The present controversy relates only to the duties of library director. To prevail she had to show that the library director is a career office under Puerto Rico law *and* that she obtained tenure or "permanent status" in that position prior to her removal. We agree with the district court's conclusion that she failed to satisfy these requirements.

Prior to becoming the library director, appellant was a librarian, which, as we

3. GRUPR § 84.1 reads as follows:
An employee acquires permanent status upon receipt of notification of his permanent appointment. The appointing authority shall extend permanent appointment to career personnel after receiving the affirmative recommendation of the employee's immediate supervisor, as well as that of the administrative authority of the unit (dean, director, etc.). Said recommendation shall be made immediately after the employee's trial period. If there should be discrepancies in the recommendations, the appointing authority shall decide which recommendation to adopt.

4. GRUPR art. 45.

5. GRUPR §§ 28.4.2, 29.9, 30.

6. GRUPR § 50.3.

7. GRUPR §§ 45.4, 100.30.

8. The Commonwealth of Puerto Rico is, of course, not a "state," but is regarded as such for purposes of analyzing this kind of claim. *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

have seen, is a teaching position. Appellant apparently contends that when she became the director of the library she acquired an additional career position of the non-teaching variety, in which she acquired "permanent status." The problem with appellant's argument, as the district court recognized in its opinion, is that the University regulations state in section 50.5.4.1 that a member of the faculty (teaching position) who has been assigned to perform administrative duties or additional tasks "shall not be granted tenure in the performance of such functions and additional tasks." [9] Appellant was a faculty member at the time she was assigned to the administrative duties of library director. The rule clearly states that a faculty member assigned to such tasks "shall not be granted tenure in the performance of such functions and additional tasks." *Id.*

Appellant recognizes the force of this provision, but asserts that she had a reasonable expectation of continuing to perform as director because she had performed excellently and because her appointment as director could only expire for cause. We are unable to find support for this rationale in the University's regulations.

Appellant argues that she was not appointed as library director pursuant to Article 50 but rather to Article 41 of the General Regulations. She contends, therefore, that section 50.5.4.1 is not applicable to her. Article 41 prescribes the norms for appointing the various officers and employees in the University system. Section 41.3.2 recognizes the chancellor's power to "appoint the directors of constituent academic units which are not part of a college, after consulting the members of the corresponding units." Article 50 regulates the tenure process. We see no contradiction between section 41.3 and section 50.5.4.1. The for-

mer recognizes the power of the chancellor to make certain appointments, while the latter limits the effect that some appointments might have in regard to the personnel status of a faculty member. The fact, therefore, that appellant may have been appointed director pursuant to section 41.3 does not establish that she obtained a property interest in that office.

Like the district court, we construe section 50.5.4.1 as operating to prevent a person who has entered the University personnel system through a teaching position from acquiring permanency in an allied administrative post to which he or she may be assigned. The University thereby retains the flexibility to name faculty members to perform special tasks on a temporary basis without undermining the principles underlying the consultation process (for faculty members) and the civil service system (for non-teaching members).

Appellant argues that she has a property interest because the position of library director is not a "trust" position.[10] We need not reach this issue here. The heart of the controversy is not whether library director is a "trust" or "career" position but rather whether appellant acquired a property interest in it. If library director is a *teaching* non-trust position, the only way appellant could have acquired a property interest is by obtaining tenure pursuant to GRUPR § 50.3. There is no evidence that she ever received such tenure in that position. Of course, if she were named library director to perform "administrative functions or additional tasks," then section 50.-5.4.1's prohibition against receiving tenure "in the performance of such" duties was applicable.

Even if we accept arguendo appellant's theory that library director is a non-teach-

---

**9.** GRUPR § 50.5.4.1 provides as follows:
  Members of the faculty to whom administrative functions or additional tasks have been assigned such as president of the University, chancellor, dean, department head, director of an institutional unit, division head, assistant to an executive officer and *other analogous administrative posts,* shall not be granted

tenure in the performance of such functions and additional tasks.
  (Emphasis supplied.)

**10.** GRUPR Article 73 defines which positions held by members of the *non-teaching* personnel shall be considered positions of trust. Library director is not mentioned.

ing,[11] non-trust position and that appellant could get "permanent status" in such position, she failed to present evidence that she in fact acquired "permanent status" pursuant to section 84.1.[12] The evidence concerning her appointment as library director does not show compliance with the statutory provisions governing the granting of permanent status in non-teaching positions. In order to be named to a non-teaching career position and obtain permanent status, a specified administrative procedure has to be followed.[13] In the present case appellant was not named to the position of director of the library following such procedure. Neither was the procedure to grant permanent status followed. The district court did not err in granting appellees' motion under Fed.R.Civ.P. 41(b).

*Affirmed.*

11.   It seems odd to conclude that library director is a non-teaching position while librarian is considered a teaching position. However, as we said before, we need not address the issue here. Regardless of how the position is classified, appellant has no property interest.

12.   *See* footnote 3, *supra.*

13.   GRUPR §§ 78–81.