**James McELEARNEY,**
**Plaintiff-Appellant,**

v.

**UNIVERSITY OF ILLINOIS AT CHICAGO CIRCLE CAMPUS, J. E. Corbally, President, and D. H. Riddle, Chancellor, Defendants-Appellees.**

No. 79–1254.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 12, 1979.

Decided Dec. 21, 1979.

Saul R. Leibowitz, Patrick J. Reilly, Chicago, Ill., for plaintiff-appellant.

John C. Tucker, Barry Sullivan, Jane A. McAtee, Chicago, Ill., for defendants-appellees.

Before SWYGERT, SPRECHER and BAUER, Circuit Judges.

PER CURIAM.

The plaintiff, James McElearney, appeals from the judgment of the district court dismissing his suit for failure to state a claim. McElearney's complaint alleged that he had been dismissed from his non-tenured faculty position with the defendant University of Illinois in violation of his rights to due process and equal protection of law. The case is now before this court on the University's motion to affirm without oral argument under Circuit Rule 15. The motion to affirm is granted.

The district court's memorandum opinion describes the allegations of McElearney's complaint and correctly disposes of the issues raised. That opinion is set out as an appendix and we adopt it as the opinion of this court. We add the following comments regarding the arguments raised on appeal.

First, on appeal McElearney relies heavily on *Soni v. Bd. of Trustees of the Univ. of Tennessee*, 513 F.2d 347 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). The *Soni* case is distinguished in *Haimowitz v. Univ. of Nevada*, 579 F.2d 526, 529 (9th Cir. 1978), in terms fully applicable to this case:

> Appellant here urges that his case presents the same factual situation as in *Soni*. Yet, the *Soni* case seems clearly distinguishable. Haimowitz was never led to believe that he had been granted a permanent position as had the teacher in *Soni*. Appellant here was only assured that he would be granted tenure when the time came and that his progress was satisfactory.
>
> Moreover, Haimowitz was fully aware of his probationary status at all times. Additionally, Haimowitz was never granted the perquisites of tenure as in *Soni*. That the circumstances in *Soni* were singularly unique is borne out by the fact it is the only case of its type. Faced with similar *de facto* tenure claims, subsequent cases have consistently distinguished *Soni* and refused to extend its application. (Citations omitted.) The facts in this case, taken as alleged, do not give rise to a reasonable expectation of employment meriting protection as a property interest.

Second, McElearney raises for the first time on appeal a contention that when the University partly based its decision to terminate him on the fact that his area of research overlapped that of an already tenured professor, the University thereby chilled McElearney's freedom of expression in violation of his First Amendment rights. McElearney thus claims a deprivation of a liberty interest requiring due process protections before his dismissal. In the first

place his claim was not presented to the district court and therefore need not be considered on appeal. *But see United States v. Stavros*, 597 F.2d 108, 111 (7th Cir. 1979) (plain violation of constitutional rights should not be disregarded even if raised for first time on appeal).

Moreover, the contention is patently frivolous. By dismissing McElearney the University administrators did not prevent him from pursuing his chosen area of research. They simply refused to underwrite it. The First Amendment does not require the State, through its University, to provide McElearney with facilities and financing for his research. Furthermore, McElearney's contention is internally inconsistent. The argument itself makes it clear that the University was not suppressing the content of McElearney's research, because the reason given was that another professor was already pursuing research in the same area. And finally, in deciding to terminate McElearney partly to avoid an overlap in research, the University merely exercised its undeniable power to determine what will be studied or taught at the University. Academic freedom does not empower a professor to dictate to the University what research will be done using the school's facilities or how many faculty positions will be devoted to a particular area. *Cf. Palmer v. Bd. of Ed. of City of Chicago*, 603 F.2d 1271 (7th Cir. 1979) (discussing the power of school administrators to determine subjects to be taught and citing *Clark v. Holmes*, 474 F.2d 928 (7th Cir. 1972), in the university setting); *Collins v. Wolfson*, 498 F.2d 1100 (5th Cir. 1974) (administration's power to terminate non-tenured professor to effectuate reduction in staff, where termination not in retaliation for exercise of First Amendment rights); *Hetrick v. Martin*, 480 F.2d 705 (6th Cir. 1973) (power to terminate non-tenured professor because her "pedagogical style" was considered unacceptable by the University).

 The third point urged by McElearney on appeal which is not treated separately in the district court's memorandum is that the University's conduct would support

a state court action based on fraud or estoppel. McElearney concludes that this amounts to protecting his job on the facts of this case and shows a state created entitlement, or property interest, requiring due process protection. It is enough to respond that not every cause of action possibly recognized by the state courts creates a constitutionally protected interest. *Cf. Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (Due Process Clause not "a font of tort law to be superimposed upon [State system of tort law]"); *Hetrick v. Martin, supra*, 480 F.2d at 709 (refusing to "elevat[e] contract law to constitutional status"). The district court carefully and correctly analyzed McElearney's claims to a constitutionally protected property interest in his job under the applicable federal cases.

Accordingly, the judgment of the district court is affirmed.

## APPENDIX

———

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| JAMES MCELEARNEY, | ) | 78 C 3184 |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY OF ILLINOIS, | ) | Before the Honorable |
| AT CHICAGO CIRCLE; J. F. | ) | George N. Leighton |
| CORBALLY President; D. H. | ) | United States |
| RIDDLE Chancellor, | ) | District Judge |
| | ) | |
| *Defendants.* | ) | |

### Memorandum Order

Plaintiff, a former assistant professor of chemistry at the University of Illinois' Chicago Circle campus, brings this action for damages and injunctive relief against defendants, the University of Illinois, its president and its chancellor, alleging that defendants violated his constitutional rights to due process and equal protection by refusing to promote him with tenure when his final non-tenured contract expired. This court's jurisdiction is invoked under 28 U.S.C. § 1343. The cause comes before the court on defendants' motion under Rule

12(b)(6), Fed.R.Civ.P., to dismiss for failure to state a claim. For the following reasons, the motion is granted.

## I.

The allegations of the complaint can be summarized as follows: Plaintiff was first employed by the university as a research associate in chemistry in September 1968. In 1970, he was promoted to the rank of assistant professor and was employed in that probationary, non-tenured capacity until his termination in August 1977. In October 1973, the chemistry department's Faculty Advisory Committee reviewed plaintiff's work and recommended his discharge. The department chairman rejected that recommendation and did not communicate its substance to plaintiff. Rather, the chairman told plaintiff that the committee had recommended that plaintiff reduce his tenure code status from six to four years, to discount the years he spent as a research associate and thus extend the period in which to develop a record for tenure consideration. He also allegedly encouraged plaintiff to believe that he would ultimately be awarded tenure. On October 29, 1973, the chairman formally requested a reduction in plaintiff's tenure code from the university's associate vice chancellor, although plaintiff did not give his written authorization to do so until January 11, 1974. Plaintiff's tenure code was reduced, allegedly in violation of university statutes and its Faculty Advisory Committee's report. Plaintiff continued to be employed under definite term contracts until 1976, when he was denied tenure and awarded a terminal contract for the 1976–77 academic year.

Plaintiff then filed a grievance challenging the manner in which his tenure decision had been handled. A hearing committee, which plaintiff alleges was improperly constituted,[1] considered his grievance and rejected his claim. Plaintiff's appeals from the committee to various university officials were unsuccessful. On these allegations, which for purposes of this motion the court accepts as true, plaintiff charges that he was denied procedural and substantive due process, and equal protection of the laws under the Fourteenth Amendment. He seeks $54,000.00 in actual and punitive damages as well as an injunction ordering his reinstatement with tenure.

In their motion to dismiss, defendants urge that plaintiff's interest in continued employment at the university is insufficient to invoke the protection of the due process clause. Since no valid procedural due process claim can be made out, defendants urge, plaintiff cannot complain of any defect in the grievance committee hearing voluntarily afforded him, nor can he state a substantive due process claim. Finally, defendants urge, plaintiff's allegations of treatment different from that afforded colleagues are insufficient to state an equal protection claim.

## II.

In order to state a due process claim for his discharge, plaintiff must be able to allege that he has a constitutionally protected property interest in the expectation of continued public employment;[2] and the existence of such an interest is determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see Young v. Brashears*, 560 F.2d 1337, 1341

1. Plaintiff alleges that the selection process for the three members of the hearing committee was flawed in that his department head's and his nominations overlapped and this overlap violated university statutes. First, plaintiff's own exhibits, incorporated into the complaint, do not support his conclusory allegations of improper selection. *See* Rule 10(c), Fed.R. Civ.P.; Comp. Ex. J at 7. Second, it is difficult to imagine that plaintiff could have been prejudiced by the method of selection, since two of the three committee members were plaintiff's nominees. (Comp. Ex. J at 3, 7; M at 1).

2. The infringement of a constitutionally protected liberty interest may also form the basis of a due process claim. *Bishop v. Wood*, 426 U.S. 341, 347–49, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Plaintiff has not alleged the infringement of any liberty interest.

(7th Cir. 1977). An examination of relevant state law, consisting of state statutes, case law, and university statutes, establishes that there is no protected property interest involved in this case.

The Board of Trustees of the defendant university has promulgated certain university statutes pursuant to statutory authority. Ill.Rev.Stat. ch. 144, §§ 4, 22, 28; *People ex rel. Board of Trustees of the University of Illinois v. Barrett*, 382 Ill. 321, 335, 46 N.E.2d 951 (1943). Article X of the university statutes, cited by both plaintiff and defendants, clearly outlines the formal tenure system for the university.[3] Section 1b(6) of Article X provides:

> An appointment for a definite term does not carry any guarantee or implication that the Board of Trustees will renew the appointment even though the appointee may have discharged his duties satisfactorily. An appointment for a definite term, if accepted, must be accepted with this stipulation.

As a probationary faculty member, under section 1b(6) of Article X, plaintiff has no property interest in continued employment and no due process protections attach.

■ Plaintiff seeks to avoid the effect of the university statutes with three arguments, none of which is persuasive. First, plaintiff argues that the informal assurances he received from his department head and his promotion from research associate to assistant professor in 1970 implied that his professional progress was satisfactory and that he would ultimately receive tenure. These reassurances and promotions, plaintiff argues, operate to estop the university from denying him formal tenure. However, against the background of formal, explicit rules governing the tenure status of faculty members, such representations and interim promotion do not create a property interest in employment. As the court noted in *Stebbins v. Weaver*, 537 F.2d 939, 942 (7th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977), "most neophyte members of university faculties" receive such reassurances, but a property interest sufficient to invoke due process protections is not created thereby. Likewise, the renewal of definite term contracts and promotion from one non-tenured position to another cannot create a property interest in light of section 1b(6)'s specific provision that a definite term appointment carries no "guarantee or implication" of renewal.

■ Second, plaintiff argues that he received *de facto* tenure because of the length of his employment: nine years. Again, the formal, explicit rules laid down in Article X preclude the possibility that length of service may confer tenure accidentally. Section 1b(2) of Article X requires formal action by the trustees to confer tenure.[4] And other sections of Article X further establish that unless the professor's contract specifically states that it is for a full-time position for an indefinite term, i. e., a tenure position, it is deemed one for a probationary position for a definite term.[5] Thus, the

3. The court has considered the certified copy of Article X, attached to defendant's memorandum, and discussed by both parties in their memoranda. Materials *dehors* the pleadings may be considered in passing on a Rule 12(b)(6) motion. 5 C. Wright & A. Miller, Federal Practice & Procedure, *Civil*: § 1364, at 668–72 (1969).

4. Section 1b(2) provides:
No appointment at the rank of assistant professor or instructor shall be for an indefinite term unless the appointment contract specifically states that it is for an indefinite term.

5. Section 1a(2) provides:
During the probationary period defined in Article X, Section 1b(1), an appointment as assistant professor shall be for not more than two years, and an appointment as instructor shall be for not more than one year. Such an appointment which begins after or extends beyond the expiration of the probationary period shall, subject to the exceptions stated in Article X, Sections 1a(3) and 1b(5), be for an indefinite term and the contract shall so state. If, because of inadvertence or otherwise, a contract for such appointment does not state that it is for an indefinite term, the provisions of Article X, Section 1b(5), shall apply.
Section 1b(5) provides:
The total amount of credit toward completion of the probationary period, including both credit for service at other institutions

length of service cannot confer tenure by inadvertence. The fact that plaintiff's probationary period was extended by a voluntary change in his tenure code is insufficient to confer *de facto* tenure and create a property interest in continued employment. *See Longarzo v. Anker*, 578 F.2d 469, 471 (2d Cir. 1978).

This conclusion is consistent with decisions of other courts in similar cases which reject the notion that *de facto* tenure can be achieved inadvertently when there is a formal tenure code. As one court summarized:

> The entire thrust of formal tenure provisions is to standardize the process of faculty selection and employment security. In other words, formal tenure regulations are designed to avoid the *de facto* tenure problem recognized in *Perry* [*v. Sindermann*, 408 U.S. at 601–603, 92 S.Ct. 2694]. Consequently, the existence of a formal code governing the granting of tenure precludes a reasonable expectation of continued employment absent extraordinary circumstances. The vast majority of cases considering claims of *de facto* expectations in the face of established tenure systems reject the idea that any protected interest may be created. *Haimowitz v. University of Nevada*, 579 F.2d 526, 528 (9th Cir. 1978) (citations omitted).

Third, plaintiff argues that the university statutes governing tenure are incomprehensible, at least to him, and that the Faculty Advisory Committee "Review of the Status of Non-Tenured Faculty Members", attached to his complaint, bears out his claim to *de facto* tenure. Ignoring the problems of plaintiff's selective comprehension, the Review itself clearly states that the Committee does not propose detailed by-laws or revisions of the university statutes and advises "[t]he university statutes are part of the employment contract of each faculty member of the University of Illinois." (Comp. Ex. I at 2). Plaintiff was on notice as to the terms of his employment contract. Moreover, the informal report could in no event override the formal explicit rules of Article X and does not amount to a binding legal document. *See Cusumano v. Ratchford*, 507 F.2d 980, 984–87 (8th Cir. 1974), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975); *cf. Plummer v. Board of Regents*, 552 F.2d 716 (6th Cir. 1977).

Because the court finds that the complaint does not allege facts adequate to state a claim for violation of plaintiff's right to procedural due process, it follows that no substantive due process claim has been stated either. *Stebbins v. Weaver*, 537 F.2d at 943. And the fact that defendants voluntarily afforded plaintiff a grievance hearing and internal appellate review is insufficient to allow plaintiff to invoke federal constitutional protections for defects in the hearing process. *Perham v. Ladd*, 436 F.Supp. 1101, 1104–05 (N.D.Ill.1977); *see Board of Curators v. Horowitz*, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). Finally, plaintiff's equal protection claim must be dismissed since it suggests no more than that he may have been treated differently from other, unnamed probationary professors who were promoted. There is nothing in the complaint to suggest that the university's action in conferring tenure on some employees but not on others, including plaintiff, was "irrational or . . . not 'free from invidious discrimination.' *Dandridge v. Williams*, 397 U.S. 471, 486–87 [,

---

and credit for prior service at this University, shall be stated in every contract for academic service for a definite term. In the event that an appointee for a definite term is not given notice of appointment for an indefinite term or notice of non-reappointment as required by subparagraph 1b(3) above, but instead is given notice of reappointment for a definite term beginning after or extending beyond the expiration of the probationary period, such reappointment shall be for a term extending to the end of the academic year following the academic year in which either (a) the Board of Trustees gives the appointee written notice of non-reappointment as specified above in subparagraph 1b(4), or (b) the appointee gives written notice to the dean or department head that he or she is about to complete, or has completed the probationary period, and either is or will be entitled to have any reappointment be for an indefinite term.

90 S.Ct. 1153, 25 L.Ed.2d 491] (1970)." *Simcox v. Board of Ed. of Lockport Tp., Will Co., Ill.*, 443 F.2d 40, 45 (7th Cir. 1971); *see Baum v. Lunding*, 535 F.2d 1016, 1018–19 (7th Cir. 1976). The differential treatment here alleged is not a constitutional violation. For these reasons defendants' motion under Rule 12(b)(6), Fed.R.Civ.P., to dismiss for failure to state a claim is granted. This suit is dismissed.

So ordered

/s/ George N. Leighton, United States District Judge

Dated: February 8, 1979