**Kamleshwar UPADHYA,
Plaintiff-Appellee,**

v.

**Donald N. LANGENBERG, et al.,
Defendants-Appellants.**

**Nos. 87-2422, 87-2555.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1987.

Decided Nov. 25, 1987.

Rehearing Denied Dec. 18, 1987.

Carla J. Rozycki, Keck, Mahin & Cate, Chicago, Ill., for defendants-appellants.

Martin J. Oberman, Chicago, Ill., for plaintiff-appellee.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The University of Illinois hired Kamleshwar Upadhya in 1984 as an assistant professor of engineering. He was appointed to the tenure track, with a decision to be made no later than fall 1988, the beginning of his fifth year. Upadhya believes that the University committed itself to give him the full five years to demonstrate his professional skills.

The University evaluates each professor on the tenure track annually, and after evaluating Upadhya in June 1986 the University decided not to renew his contract. As the Statutes of the University require, Upadhya received a terminal appointment, expiring on August 31, 1987. He filed this suit under 42 U.S.C. § 1983, contending that his discharge violated the Due Process Clause of the fourteenth amendment. The district court, 671 F.Supp. 521, held a trial and issued a permanent injunction compelling the University to "continue [Upadhya] in his present position in this employ until it has given him constitutionally sufficient due process of law with relation to his termination".

The Due Process Clause of the fourteenth amendment applies only to deprivations of "life, liberty, or property". Upadhya maintains, and the district court held, that his job is "property". The district court apparently concluded that once the University hires a professor, it may not let the professor go without providing an adversarial hearing. This is the effect of the injunction, which does not distinguish between the initial five-year period and an indefinite (tenured) appointment. We have held, however, that professors on the ten-

ure track at the University of Illinois lack a property interest in receiving tenure. *Weinstein v. University of Illinois,* 811 F.2d 1091, 1097–98 (7th Cir.1987); *McElearney v. University of Illinois,* 612 F.2d 285 (7th Cir.1979). To the extent the district court thought that an initial appointment carries with it the right to remain until dismissed after an adversarial hearing, its decision is inconsistent with settled law.

Upadhya, however, did not request the relief the district court afforded him. He wanted only an order confirming his right to remain at the University until August 1989—the end of the five-year period commencing with his appointment. He asserted a contractual entitlement to five full years on the basis of statements made during the negotiations leading to his appointment. The University, for its part, has relied on its Statutes—bylaws having the force of administrative rules and hence "law" in Illinois. *Rend Lake College Federation of Teachers v. Community College District,* 84 Ill.App.3d 308, 311, 39 Ill.Dec. 611, 614–15, 405 N.E.2d 364, 367–68 (5th Dist.1980) (collecting cases). These Statutes provide that appointments to untenured positions run no longer than two years and limit extensions to those expressly approved by the President or Board of Trustees:

> The terms of employment for all members of the academic and administrative staffs shall be stated explicitly in the contract of employment. [Art. IX § 4d.]

> Except under unusual circumstances evidenced by a special written agreement approved by the President of the University and the appointee, the tenure for the academic ranks of professor, associate professor, assistant professor, and instructor shall be as provided in this section.... During the probationary period ... an appointment as assistant professor shall be for not more than two years.... [Art. X § 1a and § 1a(2).]

> The Board of Trustees.... expressly reserves to itself the power to act on its own initiative in all matters affecting the University, notwithstanding that such ac-

tion may be in conflict ... with the provisions of these *Statutes.* [Art. XIII § 7.]

The portions of the Statutes limiting the terms of employment, we held in *McElearney* and *Weinstein,* prevent assistant professors from possessing a legitimate claim of entitlement (and hence a "property" interest) in renewal of their contracts. The University insists that the same limited duration of the initial contract of employment governs Upadhya, who therefore lacks any current "property" interest in employment at the University. Upadhya contends, and the district court found, that the professors who recruited him promised him five years to prove himself, and that this promise creates a property interest despite the Statutes and our holdings in *McElearney* and *Weinstein.*

We start with the writings, the essence of the contract. The first writing is a letter dated July 30, 1984, from Chien H. Wu, Head of the University's Department of Civil Engineering, Mechanics, and Metallurgy. The letter, written after the faculty of the Department had interviewed Upadhya and recommended his appointment, states (emphasis added):

> On behalf of the department and with the concurrence of the Dean, I am happy to be able to offer you a tenure-track assistant professorship with an initial salary of ... for the nine-month academic year. A summer appointment of two-ninths of your academic salary, which requires you to teach one course during the eight-week summer quarter, is guaranteed for the first summer.

> A tenure code of A2 must be assigned to your appointment to recognize your previous experience. This means that a recommendation for promotion or termination must be submitted by the department *no later than the beginning of your fifth year* of service on Campus. For a favorable recommendation, however, it will be necessary for you to demonstrate your ability to conduct independent research and to attract outside sponsorship.

> ... I hope very much that you will find our offer acceptable. You may indicate that fact by signing the enclosed copy of

this letter and returning it to me as soon as possible so that we may proceed to resolve the other formalities.

The "other formalities" included securing the approval of the University's Board of Trustees.

Upadhya signed the copy of Wu's letter and moved to Chicago. He found waiting a "Notification of Appointment", dated August 29, 1984, stating in part:

> By authority of The Board of Trustees of the University of Illinois, you have been appointed to the following position(s) in the University: Assistant Professor of Metallurgical Engineering—Engineering, Civil, Mechanical and Metallurgy ... Tenure Code 2 ... Percent time 100 ... Period of service Academic year 1984–85 ... Period of payment from 09–01–84 through 08–31–85 ... This appointment is made subject to all applicable laws and to the University of Illinois Statutes.... Please indicate your action (acceptance or declination of this appointment) on the attached copy and return it.... Delay in returning the acceptance may result in delay in payment of salary.

Upadhya promptly signed the attached copy and took up his duties. An administrator testified that a two-page extract of the Statutes pertinent to terms of employment is included with all such notifications. Upadhya testified that no extract came with his, that he did not obtain the Statutes from any other source despite the notification's warning that "[c]ertain terms of employment ... appear ... in the enclosed document", and that he was unacquainted with the Statutes' contents. The district court credited this testimony. Upadhya received a similar notification in September 1985 appointing him to service for "ACAD YEAR 1985–86" with a tenure code of 3; he testified, and the district court concluded, that he did not receive the extract of the Statutes with this notification either. Each notification included the advice: "When a number appears in the Tenure Code column it indicates the number of years which will be credited at the end of this appointment period toward the completion of the [seven year] probationary period identified in Article X, Section 1 of the *University of Illinois Statutes.*" Upadhya testified, and the district court found, that he did not read this advice.

These three documents (the Wu letter and the two notifications), when read in conjunction with the Statutes, show that the University was giving Upadhya a series of year-to-year contracts, with a limit of five before a tenure decision had to be made. Under *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972), a professor serving on a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position.

Upadhya relies on the circumstances of his appointment to create a property interest. He was invited to Chicago to present a paper; he was asked to move from Minneapolis to Chicago to take up a new job; he was told that he had to publish and secure outside funding, which would take time; surely, he says, these things require greater security than year-to-year appointments. Upadhya also relies on conversations preceding the July 30 letter. He discussed with Wu and other members of the department how long assistant professors had to prove themselves; they indicated that he would have five years. This is how Upadhya interpreted the tenure code 2: as a promise that he would have five years before the University would make an up-or-out decision. The district court found that such conversations took place and that Upadhya had an expectation that his term would be not less than five years.

If Upadhya had a contractual five-year term, then the Due Process Clause would require notice and an opportunity for a hearing if the University wished to dismiss Upadhya earlier. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Vail v. Board of Education,* 706 F.2d 1435, 1440–41 (7th Cir.1983), affirmed by an equally divided Court, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). So we must decide whether the oral statements and Upadhya's expectations created a term of his employment. This case is governed by the caution in *Roth,* 408 U.S.

577, 96 S.Ct. 2709, that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract desire or need for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." A "legitimate claim of entitlement" means more than a high probability of renewal. *Roth*, 408 U.S. at 578 n. 16, 96 S.Ct. at 2710 n. 16; cf. *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 463–65, 101 S.Ct. 2460, 2463–65, 69 L.Ed.2d 158 (1981). It means an "expectation ... that was legally enforceable", *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 788 n. 21, 100 S.Ct. 2467, 2477 n. 21, 65 L.Ed.2d 506 (1980), a mutually binding obligation, *Jago v. Van Curen*, 454 U.S. 14, 18–20, 102 S.Ct. 31, 34–35, 70 L.Ed.2d 13 (1981). See also, e.g., *Scott v. Village of Kewaskum*, 786 F.2d 338 (7th Cir.1986); *Reed v. Village of Shorewood*, 704 F.2d 943, 948–49 (7th Cir.1983). As the Court said in *Perry* about a claim to employment based on promises and customs of the employer: "If it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated." 408 U.S. at 602 n. 7, 92 S.Ct. at 2700 n. 7. See also *Bishop v. Wood*, 426 U.S. 341, 344–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976).

■ Upadhya's claim is based on his understanding of what was said to him, rather than on the words the University used or a reading of its Statutes. The three writings do not promise him five years' employment; the Statutes make it clear that no one with whom Upadhya dealt had the authority to make such a promise. Giving a paper, moving from one city to another, and similar activities are common among assistant professors and do not negate the Statutes. Neither do vague statements about how long Upadhya could expect to serve before a final decision. Such statements—no doubt accurate depictions of the practices—do not transmute probabilities into entitlements. We held as much in *McElearney*, 612 F.2d at 291. A misunderstanding of one's entitlements, even if reasonable, does not enlarge those entitle-

ments. *Smith v. Board of Education*, 708 F.2d 258, 264 (7th Cir.1983).

We accept the district court's finding that Upadhya believed that his appointment ran for five years and that no one expressly told him otherwise. The court also found that Upadhya did not receive or read the Statutes that would have disabused him—though Upadhya signed a document expressly incorporating these readily-available Statutes, making them part of the contract under Illinois law. E.g., *Golen v. Chamberlain Manufacturing Corp.*, 139 Ill.App.3d 53, 59, 93 Ill.Dec. 677, 682, 487 N.E.2d 121, 126 (1st Dist.1985). Upadhya's belief is still just a "unilateral expectation." It cannot be a "legitimate claim of entitlement" unless backed up by a promise. *Ladesic v. Servomation Corp.*, 140 Ill.App.3d 489, 491, 95 Ill.Dec. 12, 13, 488 N.E.2d 1355, 1356 (1st Dist.1986). (Given the parol evidence rule, Upadhya would face hurdles in relying on even an express oral promise, for he uses it to vary the terms of three subsequent writings; more, Illinois treats the Statutes as "laws," which may forbid variances by subordinate officials of the state. We need not consider whether Upadhya has adequate replies to these difficulties.)

■ The district court found that agents of the University expressly promised Upadhya he would have a five-year term. The record does not support this conclusion. Upadhya's brief cites pages 56 and 60 of the transcript of his testimony on July 20, 1987, as its only examples of such promises; when pressed at oral argument, Upadhya's counsel repeated these citations and these alone. These pages, however, contain only arguments of counsel. There is a separately paginated afternoon transcript from July 20, but it stops at page 49. The closest we could find to such a promise in Upadhya's testimony appears at page 175 of the July 20 transcript:

[Dr. McNallan said to me]: "But you can come here as an assistant or associate professor. I had a brief chat (he told) with Dr. Danyluk in the morning." In fact, he was using the word "Steve."

That, "I had a brief chat with Steve [Danyluk] and we both agreed that you can—you are qualified for any position, but we both will advise you to come here as an assistant professor, because—" And he explained me himself that it will give you in fact sufficient time, in fact five years time, in order to obtain a research grant to obtain tenure. In fact then I ask him that.

Upadhya is recounting a conversation with Dr. McNallan, a metallurgist in the Department of Engineering, on June 12, 1984, the day he interviewed the faculty and presented a paper on his initial visit to the University. Dr. Danyluk is another metallurgist on the faculty. In the light most favorable to Upadhya, this exchange shows that McNallan and Danyluk told Upadhya he would have five years as an assistant professor to make a case for tenure. This led to the belief Upadhya forcefully expressed that "I get five years [sic] time in order to obtain money before they consider me for tenure." July 20 Tr. 160.

There are two difficulties, from Upadhya's point of view, in this conversation. One is that McNallan did not distinguish between five years as an outside limit and five years as a guarantee. McNallan and Upadhya had discussed the possibility of Upadhya's starting as an associate professor, which would have set two years as the maximum before the tenure decision; McNallan advised Upadhya to start as an assistant professor so he would have more time. But being allowed more time is not the same thing as being guaranteed more time. The other difficulty is that McNallan and Danyluk are not authorized to bind the University of Illinois in such matters. Under the Statutes only the President may vary the usual terms of appointment, and that requires a special writing. The district court did not find that McNallan and Danyluk had apparent authority to bind the University, and they did not; Upadhya negotiated with Wu, the Department Head, not with McNallan and Danyluk. And when Wu made Upadhya a written offer by letter on July 30, Wu identified five years as the outer limit, not as a guarantee. To the extent the district court found that

Upadhya expected to have five years to raise money and conduct research, its findings accord with the evidence; to the extent the court found that the University promised Upadhya he could not be dismissed before five years were up, its findings are clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Upadhya misunderstood the difference between the maximum and the minimum times before a decision. Dr. Wu did not draw this difference to his attention, probably because in the great majority of cases there is none. Upadhya did not read the Statutes that spelled out the rules; anyway, the Statutes are written for lawyers rather than metallurgists. Whether or not the University treated Upadhya well, unless unilateral expectations are enough to create a property interest, Upadhya can not prevail.

A brief note about *Vail*, on which the district court principally relied. We concluded in *Vail* that a high school football coach had a "property" interest in the job for two years, even though his contract covered but one year. The coach had been given an express oral promise of renewal for the second year, after full consideration and decision by the Board of Education. This was enough, we said, to create a property interest. It should be clear by now that Upadhya does not come within the holding of *Vail:* he did not obtain an express promise that five years would be his minimum term, and any implication to that effect was unauthorized by the President and Board of Trustees of the University— the only persons who could bind the University to such contracts. *Vail* distinguished *McElearney* on these grounds, concluding that "the [University of Illinois'] explicit rules governing tenure in *McElearney* suggest that any reliance to be based on a supposed entitlement ... by virtue of the informal assurances McElearney received would be unreasonable." 706 F.2d at 1439 n. 4. So McElearney's were; so Upadhya's were. We are left with a misunderstanding: Upadhya thought he had a five-year term, but this belief cannot

be derived from a fair reading of the writings and statements in the record. Upadhya lacked a property interest in the renewal of his appointment, and the University therefore was not required to give him notice or an opportunity for a hearing.

REVERSED.

## On Petition for Rehearing

PER CURIAM.

Upadhya's petition for rehearing calls to our attention an oddity in the transcript of the trial. He cited and relied on pages 56 and 60 of a transcript of July 20, 1987. We read the transcript and found only arguments of counsel at those pages. It turns out that the court reporter produced two different sets of page numbers for the same transcript. The transcript for July 20 in the record on appeal contains two volumes, paginated 1–49 and 1–180. The July 20 transcript furnished to counsel for Upadhya contains three volumes, each starting at page 1. Pages 56 and 60 in the transcript in Upadhya's possession turn out to be pages 171 and 175 of the transcript in the record.

Why the court reporter produced different paginations of the same testimony—why, indeed, there should be at least two sets of pages 1–49 in *both* versions of the transcript—is a mystery to us. This is not a practice to be emulated, and we trust that the district judge will ensure that it is not repeated. The transcript of a trial should be paginated sequentially from beginning to end; even a new set of numbers starting at 1 each day has the potential to cause confusion. Multiple volumes of a single day's testimony each starting at 1, and different pagination in different editions of the same testimony, are bound to cause problems, as here they did. The confusion hindered our review. We file this supplemental order to provide the full review and explanation to which Upadhya is entitled.

We found and discussed, *supra* at 665, the testimony at page 60 (our 175) on which Upadhya relied—though we did not know it was the passage to which he had referred. We also found but did not discuss the passage at page 56 (our 171) on which Upadh-

ya relied. The petition for rehearing quotes his testimony describing a promise by Wu, the department head:

"Well, for assistant professor, you get five years to bring research money."

Upadhya insists that this is the missing unequivocal promise. But the full exchange given in the transcript is:

Q. All right. Was there any further discussion that you had with Dr. Wu during this meeting that you can recall?

A. The second I think then he told, "Well, for assistant professor, you get five years to bring research money." Or —no. He told, "Before we consider you for tenure and for associate professor, we will consider you after two years."

The full answer is rather different from the extract on which counsel relies. Upadhya takes back the five year figure and substitutes a two year period. This is why, though we had reviewed this transcript fully, we did not highlight this response as particularly favorable to Upadhya's cause.

At all events, even the redacted version favored by Upadhya's counsel does not carry the day. As our opinion observes, *supra* at 666, such a remark does not distinguish between the minimum guarantee and the maximum time available to Upadhya to make his case. Moreover, Wu did not have the authority under the University's Statutes to promise more than two years as a guarantee. As Upadhya repeatedly emphasizes, he had actual authority to make an offer of employment. He did not have the authority to make an extended offer; under the Statutes (quoted *supra* at 663), only the President of the University and its Board of Trustees had such authority. The passage at page 56 (our 171) of Upadhya's testimony therefore does not alter our conclusion that he lacked a property interest in employment beyond two years.

The petition for rehearing is denied.