Nancy WOLF, Plaintiff–Appellant,

v.

CITY OF FITCHBURG and G. Jean Seiling, Defendants–Appellees.

No. 88–1349.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1988.

Decided March 27, 1989.

---

Steven J. Schooler, Axley & Brynelson, Madison, Wis., for plaintiff-appellant.

Fred Gants, DeWitt Porter Huggett Schumacher & Morgan, Madison, Wis., for defendants-appellees.

Before POSNER, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff-appellant Nancy Wolf appeals the district court's grant of summary judgment on all counts to the defendants-appellees City of Fitchburg, Wisconsin and G. Jean Seiling. In her section 1983 complaint, Ms. Wolf alleged violations of her constitutional right to due process stemming from her termination as treasurer of Fitchburg and requested injunctive and monetary relief. The district court held that Ms. Wolf failed to establish any genuine issue of material fact to support her claim and that the defendants were entitled to judgment as a matter of law. We affirm.

## I

### FACTS

Nancy Wolf is the former treasurer of the City of Fitchburg, Wisconsin; G. Jean Seiling is the former mayor of Fitchburg. The relevant facts of this case reach back to April 1981 when Ms. Wolf was first elected as treasurer of the then-Town of Fitchburg; she was re-elected to that position in April 1983. Town treasurer was a

part-time job—entailing only twenty hours of work per week.

In April 1983, soon after Ms. Wolf's re-election, the Town was re-incorporated as the City of Fitchburg. On August 2, 1983, the city council (Council) met to prepare a transition from the town to city form of government. Then–Mayor LeFrambois proposed, and the Council approved, a motion to appoint Ms. Wolf as city treasurer for the remainder of her election term (until April 1985). Ms. Wolf took the oath of office and filed a bond as city treasurer.

Over the course of the next year, the Council took three actions that are relevant to this case. First, in August 1983, the Council re-adopted the town's civil service ordinance (CSO) to apply to the city employees. Fitchburg, Wis., Ordinance 83–03, R.54 at Ex. 2. Second, in October 1983, the Council adopted Ordinance 83–05, which provides that appointments to city office shall be by mayoral appointment subject to Council confirmation. Fitchburg, Wis., Ordinance 83–05, R.47 at Ex. 3. Third, on April 10, 1984, the Council adopted the recommendations contained in a study of the city government structure prepared by the accounting firm of Arthur Young. Fitchburg City Council Minutes, Apr. 10, 1984, Dep. of Melby at Ex. 6. That study suggested that the half-time positions of city treasurer and deputy clerk be categorized as civil service appointments.

On April 24, 1984, pursuant to the selection procedures of the CSO, Ms. Wolf received a second job, deputy clerk. This position required 20 hours of work per week. Since the position of city treasurer was also a part-time job—entailing only twenty hours of work per week—Ms. Wolf now worked forty hours per week. City budgets for the years 1985, 1986, and 1987 showed as a single line-item Ms. Wolf's salary as "treasurer-clerk." In 1985, she received statements from the city clerk and the alderman who chaired the city's personnel committee that the position of treasurer was now "within the civil service." During that time, she also received fringe benefits such as paid holidays, sick leave, and hospitalization protection on a par with those benefits received by full-time permanent civil servants.

In April 1985, Ms. Seiling was elected mayor. She did not reappoint Ms. Wolf as treasurer, nor did she appoint anyone else to the office. Ms. Wolf continued working as city treasurer. In April 1987, Mayor Seiling was re-elected, and on April 28, she announced her intention "not to reappoint" Ms. Wolf as treasurer. Ms. Wolf continued in the office until a new treasurer was appointed and confirmed.

Maintaining that she was a civil servant, Ms. Wolf requested a hearing as to whether there was cause for her termination. Her request was denied. Ms. Wolf then brought this action under 42 U.S.C. § 1983 in which she sought reinstatement and damages stemming from the alleged violation of her due process rights under the Constitution.

## II

## ANALYSIS

### A.

In this appeal, we review *de novo* the district court's grant of summary judgment to the defendants. "[W]e must decide whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law." *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); *see also DeValk Lincoln Mercury, Inc. v. Ford Motor Corp.*, 811 F.2d 326, 329 (7th Cir.1987).

With respect to the existence of a genuine issue of material fact, we note that both sides submitted substantial evidence—affidavits, depositions, and documentary exhibits—to the district court. A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56. At the "summary judgment stage, the

judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. If the evidence presented by the nonmovant, Ms. Wolf, was merely colorable or was not significantly probative, summary judgment would be proper. *See id.* at 249–50, 106 S.Ct. at 2510–11; *see also First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam). If, however, doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *DeValk Lincoln Mercury*, 811 F.2d at 329; *Dreher v. Sielaff*, 636 F.2d 1141, 1143 n. 4 (7th Cir.1980); *see also Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12 (like the standard for directed verdict, summary judgment inquiry addresses "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

With respect to the legal merits of her claim, Ms. Wolf's submission is that the appellees violated her constitutional right to due process by discharging her as treasurer. To prevail under the due process clause in the employment context, a plaintiff must establish a property interest in the employment. As the Supreme Court noted in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

**B.**

The district court ruled that Ms. Wolf failed to establish that her appointment as treasurer of Fitchburg was protected by (1) state or municipal law, or (2) a mutually explicit understanding. We shall examine each of these determinations separately.

**1. *Employment Protected By State or Municipal Law?***

Ms. Wolf invites our attention to several Fitchburg city ordinances and Wisconsin state statutes as the primary sources of her right to continued employment. In assessing these claims, we begin by noting that a district court's determinations of state property law, particularly those based on complex and seldom-interpreted provisions of state and local enactments, will not be lightly overturned. *See Fontano v. City of Chicago*, 820 F.2d 213 (7th Cir. 1987) (per curiam) (section 1983 case). "[T]he interpretation of state law by a district court judge sitting in the state whose law is in question is entitled to considerable deference." *Id.* at 215. Accordingly, while accepting the ultimate responsibility to review *de novo* questions of law, we shall accord great weight to the analysis of the district court.

**a) The basic statutory scheme**

As the district court noted, the Wisconsin statutory provisions on city organization clearly state that "[t]he officers [of a city] shall be a mayor, *treasurer*, clerk,...." Wis.Stat. Ann. § 62.09(1)(a) (emphasis supplied). Sections 62.09(3)(d) and (e) of the Wisconsin statutes outline the procedures by which officers in a newly created city are initially appointed. They provide that:

(d) Whenever a city is newly created the officers other than [the mayor and aldermen] shall be appointed by the mayor until provided otherwise....

(e) Appointments by the mayor shall be subject to confirmation by the council unless otherwise provided by law.

Wis.Stat.Ann. §§ 62.09(3)(d), (e). Ms. Wolf's initial appointment to the office of treasurer in August 1983 was made pursuant to these provisions.[1]

After initial organization, a city may, under section 62.09, choose one of several methods for appointing officers. *See id.* On October 11, 1983, the Council exercised that prerogative. It enacted Ordinance 83–05. Subsection 1.00(8) of that ordinance states that city officers would be appointed by the mayor subject to Council confirmation.[2] Thus, the Council decided to retain the same appointment method as it had used as a newly created city.

b) Application to this case

We believe that the district court correctly decided that Ms. Wolf never was appointed under Ordinance 83–05. Therefore, in order to determine whether she had a cognizable property interest in her position

as treasurer, we turn to what the district court correctly characterized as the "pivotal"[3] issue—the term of Ms. Wolf's initial appointment.[4] Ms. Wolf submits that she had a property interest because of the operation of either state statutes or the Fitchburg civil service ordinance. We shall discuss each separately.

i. *employment protected by state statute?*

■ Because no Wisconsin statute speaks directly to the term of appointive officers such as the city treasurer, the district court concluded that Ms. Wolf's term as the appointed treasurer of Fitchburg expired with the expiration of the term of the appointing authority—Mayor LeFrambois—in April 1985. Mem. op. at 7 (citing 63A Am.Jur.2d *Public Officers and Employees* § 165). We concur in that determination and in the resulting conclusion that, after Mayor LeFrambois' term expired, Ms. Wolf was a holdover treasurer subject to removal by the successor mayor at any time. *See Adamczyk v. Town of Caledonia*, 52 Wis.2d 270, 190 N.W.2d 137, 140 (1971).[5] Therefore, as a matter of state

1. There is some controversy about the nature of Ms. Wolf's appointment. The appellant seems to argue that she was appointed only by the Council, while the appellees argue that she was appointed by the mayor and confirmed by the Council. As the district court noted, however, if the appellant's argument proves to be correct, she undermines her cause of action, for such an appointment would have been invalid under state law, *supra*, and thus she never validly held the treasurer position as an officer *or* as a civil servant. Mem. op. at 5–6. Like the district court, then, this court shall read the facts most favorably to the nonmovant and assume that she was properly appointed city treasurer in August 1983.

2. Subsection 1.00(8) of that ordinance provides in relevant part that

[t]he Mayor shall make appointments of City Officers with confirmation by the Council. The Mayor shall provide the Council with information about the person to be appointed to any office....
Ordinance 83–05 at § 1.00(8).

3. Mem. op. at 6.

4. Although unstated by the district court, the significance of this inquiry stems from the rele-

vant portion of the statutory provision governing the midterm removal of city officers.

(c) *Appointive.* Appointive officers, by whomever appointed, [can be removed] by the common council, for cause, except officers appointed by the council who may be removed by that body, at pleasure.
Wis.Stat.Ann. § 17.12(1)(c). Due to this statute, should Ms. Wolf be found to have been an officer removed, without cause, by mayoral decision alone, then such removal was improper. The appellees recognize this fact. Appellees' Br. at 41 n. 28. They argue instead that the appellant's term of office expired upon the termination of the preceding term of the appointing authority (Mayor LeFrambois), and thus Ms. Wolf was a "holdover" treasurer. We agree.

5. The *Adamczyk* court stated that:

"Unless the law otherwise provides, if a municipal officer is appointed, or elected, as by a council or board, and no definite term is prescribed, he holds at the will or pleasure of his superior or the appointing or electing authority; hence, the power of removal may be exercised at any time by such agency. In such case the power of removal is regarded as incident to the power of appointment or election. Indeed, it has been announced that the

law, Ms. Wolf enjoyed, at the time of her removal by Mayor Seiling, no property interest protected by the due process clause.

### ii. *employment protected by city civil service ordinance?*

■ As the district judge noted, Fitchburg could have elected to place the position of city treasurer under its civil service system. Section 66.19 of the Wisconsin statutes provides in relevant part as follows:

> Any city or village may proceed ... to establish a civil service system of selection, tenure and status, and the system may be made applicable to all municipal personnel except the chief executive and members of the governing body, members of boards and commissions including election officials, employees subject to section 62.13, members of the judiciary and supervisors.

Wis.Stat.Ann. § 66.19. This statute plainly contemplates the possibility of certain officers such as the city treasurer being within the scope of the civil service. Moreover, as the appellant submits, "[n]othing in Ordinance 83–05 disqualifies Wolf from being subject to the civil service ordinance." Appellant's Br. at 30.

Of course, we must decide not only whether Fitchburg *could have placed* the city treasurer's job within the civil service system but whether it *did* treat the position in that manner. Ms. Wolf's argument can be summarized as follows: 1) Ordinance 83–05 makes all full-time employees of the city subject to the civil service system; 2) a "full-time employee" is defined as "one who normally works eight hours a day, five days a week year round"; 3) her simultaneous holding of two half-time positions rendered her a full-time employee within the meaning of the civil service ordinance and thus subject to all the ordinance's provisions, including the provision

that she may be discharged only for cause and after a hearing.

We believe that the district court was correct in rejecting this argument. The legislative acts of the city must be read as a totality in order to interpret the intent of the Council. While the Council did enact a civil service ordinance designed "to provide security for *employees* by assuring them of permanent employment in an environment which is free from political considerations, partisanship, or favoritism in the selection, and advancement of employees ...," CSO § 16.01(2) (emphasis supplied), it also provided in Ordinance 83–05 for the political appointment of city officers such as the treasurer. The district court quite properly concluded that "if the Council intended to convert the office of treasurer from a political to a permanent position it would have done so in very certain and explicit terms." Mem. op. at 9. Also, like the district court, we find it persuasive that, although the civil service ordinance stipulates a fixed application procedure entailing the posting of an opening, filing of an application, probationary year of initial employment and then permanent appointment, *see* CSO at §§ 16.05–16.09, Ms. Wolf followed none of those procedures. No notice of job opening was posted pursuant to CSO section 16.05. Nor did Ms. Wolf file an application for the position pursuant to CSO section 16.06. Ms. Wolf served no probationary period under CSO section 16.-08. Ms. Wolf was not approved by the Council pursuant to CSO section 16.07(1). Ms. Wolf was never permanently appointed to her position pursuant to CSO section 16.09. Finally, Ms. Wolf's position as treasurer is not listed within the compensation plan in CSO section 16.14. Although Ms. Wolf received benefits consistent with the CSO, those fringe benefits are generally also available to employees who are not covered by the CSO by virtue of the provision for part-time employees and provisions for elected officials. *See* Mem. op. at 10.

---

law will write into an ordinance creating an office the power to terminate it or to remove the incumbent at will. It follows that power of removal may be exercised at any time, without notice, and without the necessity of providing formal procedure therefor; and

such power cannot be divested or taken away, except by limiting the term; but power to do this must be expressly conferred by the charter or statute applicable."
190 N.W.2d at 140 (quoting 4 McQuillin, Municipal Corporations § 12.249 at 303–06 (3d ed.)).

It is also important that, in October 1985, the Council rejected a proposed charter amendment that would have placed several city officer positions, including treasurer, within the coverage of the CSO. R. 54 at Ex. 16. Nor do we believe that Ms. Wolf's subsequent acquisition of another half-time job within Fitchburg city government converted her status from city official to protected civil servant. The CSO for-cause clause restricts its application to "permanent" employees. CSO at § 16.10(1). The CSO defines a "permanent" employee as a "full-time *employee* who has completed the initial probation and received a *permanent appointment* to his or her position." *Id.* at § 16.02(2) (emphasis supplied). Ms. Wolf did not receive a civil service appointment as treasurer. Therefore, she was not a permanent employee, and not entitled to the protections accorded civil servants by the CSO. Accordingly, the district court properly rejected Ms. Wolf's contention that her forty-hour per week status brought her within the protection of the CSO. We agree that a contrary interpretation

> would produce absurd results. First, this interpretation would mean that the Treasurer position would be a politically appointed position to be chosen by the Mayor, except in those instances where the Council chose to give the Treasurer another half-time job within the City. Thus, the political or nonpolitical nature of the appointment would depend entirely upon the ability of the Treasurer to obtain another job within the City.

Mem. op. at 10–11.

Evidence such as several Council budgets that refer to treasurer as a post joined to the non-officer position of deputy clerk, Ms. Wolf's receiving fringe benefits under the civil service plan, and comments from her superiors does not demonstrate that the appellant gained CSO protection from termination without cause. Only appropriate legislative action by the Council, *see* Wis.Stat. Ann. §§ 62.09(3)(b)6, 66.01(2), could bring Ms. Wolf's treasurer post within the ambit of the CSO. The one formal action that *was* taken, and on which the appellant relies—the Council's April 1984

motion adopting the recommendations of the Arthur Young study that listed treasurer and deputy clerk as one-half time civil service appointments—did not rise to the level of a CSO or charter amendment, nor did it purport to appoint anyone. Thus, as the district court concluded, "it is plain that the recommendations did not apply directly to the existing Civil Service Ordinance." Mem. op. at 11. The district court correctly concluded that the April 1984 motion did not effectuate a change in the appellant's status.

### 2. *Employment Protected By Mutually Explicit Understanding?*

Ms. Wolf alternatively submits that her position as treasurer was protected by a mutually explicit understanding that she was under the CSO. Admittedly, even if no statute- or ordinance-based right to protected employment exists, the appellant may still possess a protectible property right arising out of an implied agreement. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see also Vail v. Board of Educ.*, 706 F.2d 1435, 1438 (7th Cir.1983), *aff'd by an equally divided Court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). The Supreme Court has stated that a "person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699. " '[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Id.* (citation omitted).

Ms. Wolf submits that, like the professor in *Perry* who was found to have a protectible property interest stemming from the college's *de facto* tenure policy, she too was entitled to a hearing prior to the "dep-

rivation" of her property interest in the position of treasurer. In support of her property claim, she points to the relevant Council minutes, annual city budgets, an alderman's statement, a supervisor's statement, and benefits received under the civil service plan as evidence of a mutually explicit understanding that she was entitled to a pre-termination hearing. Appellant's Br. at 39–50 (citing *Vail, supra; Soni v. Board of Trustees*, 513 F.2d 347 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976) (a case relied upon by this court in *Vail*); *Patkus v. Sangamor–Cass Corp.*, 769 F.2d 1251 (7th Cir.1985)).[6]

We cannot accept Ms. Wolf's submission. It is now firmly established that the "mutually explicit understandings" that constitute property interests under the holding of *Perry* cannot be based on the representations of government officials who are not authorized to make such representations. *See Common v. Williams*, 859 F.2d 467, 471–72 (7th Cir.1988); *Shlay v. Montgomery*, 802 F.2d 918, 922–23 (7th Cir.1986). We believe that the district court was correct in holding that the representations made by city authorities to Ms. Wolf were unenforceable because they were *ultra vires*. The city never took appropriate legislative action to include the treasurer position within the civil service ordinance. *See Common*, 859 F.2d at 469–72 (holding that informal assurances made without statutory authority cannot create a cognizible property interest); *McElearney v. University of Illinois*, 612 F.2d 285 (7th Cir.1979) (informal assurances by supervisors did not estop university from denying tenure to assistant professor).

Indeed, this case resembles the situation presented in *Valentine v. Joliet Twp. School Dist.*, 802 F.2d 981 (7th Cir.1986). In *Valentine*, the plaintiff, a school guidance counselor not recalled after layoffs, filed an argument that is remarkably similar to that submitted by Ms. Wolf in this case. The guidance counselor argued that,

> while the defendant administrators may not have had *actual* authority to bind the school district by their oral assurances to plaintiff, the administrators had *apparent* authority and acted under color of law which is sufficient under *Vail v. Board of Educ.*, 706 F.2d 1435 (7th Cir. 1982), *aff'd*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).

In *Patkus*, a fired CETA director brought suit against her former employer. Despite the plaintiff's lack of a written employment contract, we found a protectible property interest in continued employment stemming from the employer's promise to the federal government "to implement a dismissal only for cause personnel policy." 769 F.2d at 1264. Under those "very particular circumstances," such a promise was interpreted as creating a legitimate expectation of continued employment in the plaintiff, even though the employer had not formally adopted the promised policy. *Id. Patkus* noted that

> it appears that there were two fairly explicit mutual understandings and that they support conflicting conclusions. Both [the plaintiff] Patkus and the [defendant] county officials knew that the county had agreed to adopt federally required procedures and that that adoption was necessary in order to receive funds for the CETA program. At the same time, both parties knew that the provisions in question had not been adopted and were not, in fact, followed in all Consortium personnel decisions.

*Id.* at 1263.

---

**6.** In *Vail*, this court found an implied contract for a two-year athletic coach position had been created by board of education consensus and agreement of the coach. When the coach was fired after one year, the court found that a protectible property interest had been violated. 706 F.2d at 1436–37. The courts in *Soni* and *Patkus* also found, on the facts presented, protectible property interests in the plaintiff's employment positions. In *Soni*, the Sixth Circuit found a protectible property interest after finding sufficient objective evidence to vest the plaintiff with a cognizable property interest in continued and future employment. 513 F.2d at 350. The evidence included a departmental memorandum recommending tenure, change in the plaintiff's title, congratulations by faculty members, and assurances by the department head that the plaintiff would receive tenure. *Id.* at 349–50. The plaintiff relied on these promises, and the Sixth Circuit affirmed the district court, holding that the plaintiff had a viable understanding that his employment would continue on a permanent basis, " 'notwithstanding the statement ... that [Dr. Soni's] position was one without tenure.' " *Id.* at 351 (quoting *Soni v. Board of Trustees*, 376 F.Supp. 289, 292 (E.D. Tenn.1974)).

802 F.2d at 987 (emphasis in original). This court, however, rejected this argument; it noted that, in *Vail*, the school board, the only entity authorized to appoint teachers, deliberately authorized and sent a representative to reassure the plaintiff in that case.[7] Unlike the school board representative in *Vail*, the alderman who spoke to Ms. Wolf was not authorized by the Council to adjust or to clarify Ms. Wolf's employment status on behalf of the Council. Similarly, the budget references were made for administrative convenience, not for the purpose of vesting Ms. Wolf with rights under the CSO. At its core, this case results from misunderstandings and misstatements of law by the various parties involved. "A misunderstanding of one's entitlements, even if reasonable, does not enlarge those entitlements." *Upadhya v. Langenberg*, 834 F.2d 661, 665 (7th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Ms. Wolf did not possess a property interest in her position protectible under the due process clause.

## Conclusion

The district court properly concluded that, under the prevailing case law, Ms. Wolf cannot establish that she possessed a cognizable property interest in her position as treasurer. Accordingly, summary judgment was appropriate. The judgment of the district court is affirmed.

AFFIRMED.

---

**7.** In distinguishing *Vail*, the *Valentine* court also noted that the *Vail* plaintiff demonstrated reasonable reliance. 802 F.2d at 987. We need not reach this issue here, however, since, as noted in the text, the representations made to Ms. Wolf were not authorized.