John FONTANO, Plaintiff-Appellant,

v.

CITY OF CHICAGO, a municipal corporation, and Eugene Barnes, Defendants-Appellees.

No. 86–1294.

United States Court of Appeals, Seventh Circuit.

Submitted April 15, 1987.*

Decided May 14, 1987.

Joseph J. Spingola, Joseph J. Spingola, Ltd., Chicago, Ill., for plaintiff-appellant.

E. Wayne Robinson, Acting Corp. Counsel, Chicago, Ill., Mary K. Rochford, Chief Asst. Corp. Counsel, Jennifer A. Keller, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

PER CURIAM.

John Fontano was fired from his position with the Chicago Department of Sewers one day before his six-month probationary period was to end. Fontano sued the City of Chicago (City) and his supervisor, Eugene Barnes, claiming that his termination violated various rights which he was entitled to under the United States constitution and Illinois state law. The district court dismissed the complaint for failure to state a federal cause of action and refused to retain jurisdiction over the pendant state claims, 646 F.Supp. 599. The court also denied Fontano's subsequent motion to amend the complaint. Fontano appeals.

### I.

The facts, viewed in the light most favorable to Fontano, are as follows. Prior to January 1, 1984, the City employed Fonta-

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

no as an at-will laborer for the Department of Sewers, a position falling within the classification of Departmental Employment Services (DES). In its 1984 Appropriation Ordinance, the City reclassified Fontano and other DES employees as Probationary Career Services (PCS) employees as of January 1, 1984. The Commissioner of Personnel, Charles Pounian, notified Fontano of this status change in a memorandum dated January 10, 1984. The memorandum informed Fontano that he was to serve a six-month probationary period during which he would be governed by Personnel Rule IX, a copy of which was attached. Rule IX, section 3, provided that, "[a] department head may discharge an employee during the probationary period provided the department head notifies the Commissioner of Personnel in writing." According to section 4 of the Rule, "[a]ny employee who completes a probationary period shall have Career Service status in that title." In addition to the guidelines provided in Rule IX, the memorandum itself informed Fontano that:

> B. Your work performance will be rated by your department twice during the six month probationary period. Ratings will be in March and June, 1984. Rating factors include 1) quality and quantity of work, 2) ability to work with others, 3) ability to learn, 4) ability to work safely, 5) initiative and acceptance of responsibility, 6) use of equipment and 7) attendance and punctuality.

> If you successfully complete your probationary period you attain full Career Service status in your title [and you will then be entitled to]....

> 2. Hearings before the Personnel Board in all suspensions of more than 30 days, demotions or discharges.

To Fontano's knowledge, his department never rated his performance during his probationary period. Nonetheless, one day before his probationary period expired, appellee Eugene Barnes, the Acting Commissioner of the Department of Sewers, fired Fontano without giving him any reason. One week later, Pounian notified Fontano by letter that he had been terminated for excessive absenteeism.

Fontano filed suit in the district court, alleging that the defendants deprived him of his constitutional right to due process in violation of 42 U.S.C. § 1983. Fontano claimed that he had obtained a property interest in his expectation of continued employment based upon the combination of his status change, the promise of performance ratings detailed in the January 1984 memorandum, and chapter 25.1, section 25.-1-1 of the Municipal Code of Chicago which provides for a merit system of employment. Fontano also alleged violations of state law. The district court dismissed Fontano's due process claim for failure to state a cause of action and dismissed the pendant state claims for lack of jurisdiction. Fontano moved to vacate the district court's order and to file a second amended complaint. The motion was denied. Fontano appeals both the dismissal of his complaint and the denial of his motion to amend.

## II.

In order to state a due process claim for his discharge, Fontano must establish that he had a constitutionally protected property interest in the entitlement to continued employment. *Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–79, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). In determining whether Fontano has a property interest, we look to state law. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. As the Supreme Court declared in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976):

> A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.

426 U.S. at 344, 96 S.Ct at 2077 (footnotes omitted); *Ohse v. Hughes*, 816 F.2d 1144, 1148 (7th Cir.1987).

The interpretation of state law by a district court judge sitting in the state whose law is in question is entitled to considerable deference. *Enis v. Continental Illinois National Bank & Trust Co. of Illinois,* 795 F.2d 39, 40 (7th Cir.1986). "Deference is particularly appropriate where the state's supreme court has not spoken to the issue...." *Id.* Where other district judges in the same state have reached contrary conclusions, as is the case here, however, it is for this court to resolve the contradictions. *Id.*

The question of whether individuals, such as Fontano, who had been employed by the City for many years before being put on probation under the Career Service scheme, had a property interest in their jobs, has yet to be decided by Illinois courts. *See, e.g., Messina v. City of Chicago,* 145 Ill.App.3d 549, 561, 99 Ill.Dec. 493, 501, 495 N.E.2d 1228, 1236 (1986). Several federal district courts, however, have addressed the issue. Judge Rovner, in *Gutierrez v. City of Chicago,* 605 F.Supp. 973 (N.D.Ill.1985), refused to dismiss a similar complaint for failure to state a claim. The judge found that the January 10, 1984 memorandum providing for two performance ratings of probationary employees, combined with the statement that PCS employees would obtain Career Service status at the satisfactory completion of the probationary period, may have created a mutually explicit understanding "that such employees would be fired only for cause." *Id.* at 977. Judge Rovner found that this "understanding" conflicted with Rule IX, section 3, which allowed for the discharge of a probationary employee at any time provided the reason for the discharge was communicated in writing to the Personnel Commissioner. She therefore refused to dismiss the complaint without more than the City's unsupported assertions regarding the purposes behind the memorandum and the rules. *Id. See also Gilberto v. City of Chicago,* No. 85 C 2496 (N.D.Ill. Sept. 6, 1985) [Available on WESTLAW DCT database] (Grady, J., following *Gutierrez* to find that Gilberto had a property interest during probationary period).

In this case, however, Judge Decker rejected the *Gutierrez* reasoning. Instead, he found there to be no "mutually explicit understanding" between PCS employees and the City regarding their expectation of continued employment since Rule IX, which the memorandum incorporated, provided that a PCS employee could be fired for any reason. Rather than contradictory, Judge Decker found the language in Rule IX and the memorandum compatible; the seven factors in the memorandum merely provided the City with guidelines for evaluating an employee during the transitional context of probationary employment. The judge did not agree that the memorandum created an understanding requiring the City to retain a PCS employee so long as the employee satisfied the seven rating factors. Since Judge Decker found that all of the exhibits attached to Fontano's complaint made it clear that PCS employees had no legitimate expectation of continued employment, he dismissed Fontano's due process claim. We find Judge Decker's reasoning sound.

Although Fontano admits that a probationary period is generally a trial period with no expectation of continued employment, he argues that this is not true when probationary status is conferred on an existing employee. Fontano argues that when the City changed his status from a DES to a PCS employee, issued a memorandum promising that his work performance would be rated twice, and passed an ordinance providing for a merit system of employment, it created a "mutually explicit understanding" that PCS employees would be fired only for cause. Moreover, Fontano asserts that the memorandum established a duty upon the City to inform him if his work was unsatisfactory. Since, to Fontano's knowledge, his performance was never rated, he asserts that he had a right to expect that his performance was adequate. He therefore claims that he should not have been fired.

Chapter 25, section 25.1–1 of the City's Municipal Code provides that the purpose of that ordinance is "to provide for a professional and progressive merit system of employment." Fontano would like us to

read only this section of the ordinance and conclude that it is part of a "mutually explicit understanding" to create a property interest in probationary employment. Reading further in the ordinance, however, we find that, in order to accomplish this goal, the ordinance requires the Commissioner of Personnel to issue rules to govern City employment. *Id.* § 25.5. The ordinance requires the Commissioner to issue rules for both probationary periods, *id.* § 25.1–5(7), and for disciplinary measures, *id.* § 25.1–5(12). Section 25.1–5(12) specifically requires the Commissioner to establish disciplinary measures that "shall provide for presentation of charges, hearing rights, and appeals for all *permanent* employees in the career service, consistent with the requirements of due process in law." (emphasis added). The ordinance has no similar requirement for probationary employees in the Career Service.

Fontano also wants us to disregard Personnel Rule IX, which was issued pursuant to the ordinance, since it allegedly conflicts with the January 1984 memorandum. We see no conflict. Both the memorandum and Rule IX provide that a PCS employee can become a Career Service employee only after completing a probationary period. The memorandum states that PCS employees will be rated twice, and Rule IX says nothing to the contrary. The only reference to probationary performance ratings in the Personnel Rules is found in Rule XIV, section 5 which provides that "the performance ratings ... *may* be used as a basis for termination or retention of an employee on probation." (emphasis added). Nothing in the ordinance, the rules or the memorandum requires, however, an unsatisfactory performance rating as a prerequisite to firing a probationary employee. In fact, the memorandum specifically informed Fontano that the only prerequisite to his discharge was that the Commissioner of Personnel be notified in writing.

Contrary to Fontano's characterization of the memorandum, we believe that it specifically distinguishes probationary from permanent Career Service employees by explaining that certain procedural safeguards attach only after attaining full Career Service status. This statement in the memorandum is consistent with section 25.1–5(12) of the Municipal Code and with Personnel Rule XVIII, both of which provide for procedural safeguards prior to discharge of a permanent Career Service employee. Significantly, nowhere in the ordinance, the rules or the memorandum are PCS employees afforded procedural safeguards prior to discharge.

Fontano further asserts that, since he had more rights as a DES than as a PCS employee, the City created a legitimate expectation of continued employment. We agree that his change in employment status was a move from completely at-will employment to an experimental testing period. The City made no promise, implied or otherwise, for continued employment, however, if for any reason the experimental relationship led to the conclusion that a continued relationship might not be satisfactory. Since the City decided, at its discretion, to fire Fontano one day before his probationary period was over, he never obtained Career Service status and its attendant procedural due process protections. Perhaps Fontano has a breach of contract claim under state law for the City's failure to rate his performance, *see, e.g., Duldulao v. St. Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987); he has failed, however, to state a federal claim.

Fontano also challenges the district court's refusal to allow him to file an amended complaint after the order dismissing his original complaint was entered. We will not disturb the court's ruling, however, because Fontano had no right under Rule 15(a) of the Federal Rules of Civil Procedure to file an amended complaint after judgment was entered. *Twohy v. First National Bank of Chicago,* 758 F.2d 1185 (7th Cir.1985).

AFFIRMED.