841 F.2d 186
 Martell E. DAVIS, Plaintiff-Appellant,
v.
CITY OF CHICAGO, Lester Dickinson, individually and in his
official capacity as Commissioner of the
Department of Streets and Sanitation, et
al., Defendants-Appellees.
 No. 87-1829.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 2, 1987.
Decided March 7, 1988.
 
 Bruce R. Meckler, Phelan, Pope & John, Ltd., Chicago, Ill., for plaintiff-appellant.
 Joanne Simboli Hodge, Corp. Counsel, Chicago, Ill., for defendants-appellees.
 Before POSNER, FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 Martell E. Davis was dismissed from his position as a foreman in the City of Chicago's Bureau of Rodent Control. He appeals the District Court's grant of summary judgment to the defendants, the City and two City officials. Davis brought this action in District Court alleging that his discharge deprived him of his constitutionally protected property and liberty interests under the Fourteenth Amendment and under 42 U.S.C. Sec. 1983. The District Court had jurisdiction under 28 U.S.C. Secs. 1331 and 1343. Davis sued the City and two of the City officials responsible for his dismissal, in both their individual and official capacities.
 
 
 2
 Davis served as a foreman with the City of Chicago from May 1981 until he was terminated in June of 1984. He had been classified as a Departmental Employment Service ("DES") employee. This classification rendered him an at-will employee of the City until January 1, 1984, when the City's Appropriation Ordinance unilaterally reclassified all DES employees to Probationary Career Service status. According to this ordinance, after serving six months on probationary status these reclassified employees would attain permanent, career service status. Once an employee achieved such status, he could only be dismissed for cause. Mun.Code Secs. 25.1-5(12), 25.1-6. Davis was notified of his status change through a memorandum issued by the City on January 10, 1984, to all such employees.
 
 
 3
 On June 29, 1984, the day before his six-month probationary term was to expire, Davis was discharged by the Commissioner of the Bureau of Rodent Control. In his affidavit, Davis averred that he was informed that his November 11, 1980 drug arrest formed the basis for his dismissal. In a letter dated July 3, 1984, the City's Commissioner of Personnel formally notified him that he was fired because of his "involvement in the illegal sale, delivery, receipt or use of controlled substance and conduct prohibited by the Municipal Code of the City of Chicago, the Illinois revised statute or federal statutes." The criminal charges filed against Davis for his 1980 drug arrest had been dropped earlier, and Davis' record was expunged in 1981. Davis was discharged without a hearing or an opportunity to respond to the charges either before or after his dismissal.
 
 
 4
 The District Court granted the respondents' motion to dismiss Counts II and III of Davis' amended complaint. Count II alleged violations of his liberty interests under the Fourteenth Amendment, and Count III alleged intentional and malicious disregard of his constitutional rights under 42 U.S.C. Sec. 1983. The appellant does not appeal the dismissal of Counts II and III. The District Court later dismissed Count I of his complaint, which claimed that Davis was deprived of his protected property interest in continued employment. Count I was dismissed because the parties agreed to submit this claim to arbitration. The arbitrator determined that Davis was not available for reinstatement because he was incarcerated for unrelated drug charges at the time of the arbitration decision. The arbitrator did not decide the merits of Davis' grievance. The District Court then granted Davis' pro se motion to reinstate his Count I claim, and subsequently granted summary judgment for the defendants on this count. Davis appeals. We have jurisdiction of this appeal under 28 U.S.C. Sec. 1291.
 
 
 5
 The only issue presented for review is whether there is a genuine issue of material fact regarding the existence of the alleged property interests. Davis contends that the City has a long-standing custom and policy of discharging probationary foremen only for cause arising during the probationary period. We find that the petitioner has not sufficiently shown that a genuine issue of material fact exists to defeat summary judgment, and we affirm the District Court's decision.
 
 
 6
 * Rule 56(c) of the Federal Rules of Civil Procedure mandates that in order for a party to succeed on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." However, the non-movant, or adverse party, may attempt to defeat the motion. In order to do so, Rule 56(e) specifies that "an adverse party may not rest upon the mere allegations or denial of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis supplied). See also Posey v. Skyline Corp., 702 F.2d 102 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). The affidavits presented must be based on the personal knowledge of the affiants and must set forth the facts in a manner that would be admissible in evidence. Fed.R.Civ.P. 56(e).
 
 
 7
 The defendants have satisfied their burden under Rule 56 of showing that no genuine issue of material fact exists. While Davis alleges that such an issue exists regarding his property interests in continued employment with the City, the defendants challenge the factual basis for that assertion. No explicit statutory authority exists which accords due process rights to probationary employees. Nonetheless, Davis claims he has a property right because of an alleged long-standing custom and policy that probationary foremen would not be fired except for cause that arose during the term of their probation. Davis supports his claim of this alleged custom by relying exclusively on one conclusory statement in his affidavit. Not only do the defendants challenge the sufficiency of this conclusory statement, but in support of their motion for summary judgment in the District Court, they under oath denied the very existence of such a policy.
 
 
 8
 In order for Davis to assert a property interest, he must show that he "has a 'legitimate claim of entitlement' not to lose a valuable governmental benefit except for cause." Begg v. Moffitt, 555 F.Supp. 1344, 1348 (N.D.Ill.1983). Protected property interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see also Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). While property interests may be a matter of statutory entitlement, see Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970), they may also arise from mutually explicit understandings, see Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). An established custom or policy may be used as evidence that a mutually explicit understanding exists. For example, in Perry v. Sindermann, the Supreme Court held that an untenured professor at a state junior college may have a protected property interest in continued employment if the college utilizes a de facto tenure system. 408 U.S. at 602, 92 S.Ct. at 2700. However, a merely subjective and unilateral expectancy is not protected by due process. Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. It must be established that the custom was indeed practiced. See Auriemma v. Chicago, 601 F.Supp. 1080, 1083 (N.D.Ill.1984).
 
 
 9
 To substantiate his property claim of a long-standing custom or policy, Davis has only submitted one conclusory statement in his affidavit. Item 12 states: "It is a longstanding custom and policy of the City of Chicago's Department of Streets and Sanitation that a foreman on probationary status will be fired only for cause arising during the probationary period itself." This one-sentence statement fails to give the source or derivation of this alleged custom, any indication of when it came into being or how long it existed, any proof that other probationary employees were aware of it or had relied on it, any explanation for why such a long-standing custom would not have been alluded to explicitly in the 1984 statute, or examples of any other situation where it had been utilized. In short, while Davis need not allege any particular one of these facts, he does have the burden of establishing some fact in his affidavit which would create a genuine issue as to the existence of a property interest. As this Court has stated previously, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hadley v. County of Du Page, 715 F.2d 1238, 1243 (7th Cir.1983). See also Valentine v. Joliet Township High School Dist., 802 F.2d 981, 987 (7th Cir.1986).
 
 
 10
 Davis' assertion not only fails to satisfy the requirements of Federal Rule of Civil Procedure 56(e), but it also fails to satisfy the requirements for evidence based on personal knowledge set forth by Federal Rule of Evidence 602. Rule 602 mandates that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter." Davis' conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter. See United States v. Quezada, 754 F.2d 1190, 1195-96 (5th Cir.1985).
 
 
 11
 Although all inferences drawn from the facts presented must be made in favor of the non-movant when a motion for summary judgment is reviewed, Fed.R.Civ.P. 56(c); see also Arnett v. Kennedy, 416 U.S. 134, 139, 94 S.Ct. 1633, 1637, 40 L.Ed.2d 15 (1974); International Administrators, Inc. v. Life Insur. Co., 753 F.2d 1373, 1378 (7th Cir.1985); the inferences drawn must be reasonable. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Posey v. Skyline Corp., 702 F.2d at 106. "[T]he mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment." Posey v. Skyline Corp., 702 F.2d at 106. Summary judgment should only be reversed "if a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible." Munson v. Friske, 754 F.2d 683, 690 (7th Cir.1985). Because Davis substantiates his allegations of a long-standing custom or policy solely on the basis of his one conclusory sentence in his affidavit, we cannot reasonably infer that such a custom did indeed exist without more.
 
 
 12
 Davis himself impliedly acknowledges the inadequacy of the facts he is alleging. On appeal, he claims that summary judgment is inappropriate where there has been no discovery. Essentially, he is arguing that he did not have sufficient opportunity to substantiate his claim factually. However, he bears the sole responsibility for the lack of discovery because he failed to alert the District Court by asking for a continuance or taking any other action which would have resulted in additional discovery time. He is thereby precluded from raising that issue here.[1]II
 
 
 13
 In granting the defendants' motion for summary judgment, the District Court did not expressly determine the sufficiency of the factual showing because it determined as a matter of law that the policy asserted by Davis was immaterial to the outcome. It found that the City's Annual Appropriation Ordinance of 1984 foreclosed any reliance on custom or policy to secure a property interest. Our analysis indicates that a genuine issue of material fact does not exist, and we thus affirm on that basis and do not address the conclusion of the District Court regarding the impact of the Ordinance. See Box v. A & P Tea Co., 772 F.2d 1372, 1376 (7th Cir.1985) (establishing that the Court of Appeals may affirm a summary judgment on any grounds that the record will support), cert. denied, --- U.S. ----, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); see also Harper Plastics, Inc. v. Amoco Chemicals Corp., 617 F.2d 468, 472 n. 11 (7th Cir.1980); Miller v. Gateway Transportation Co., Inc., 616 F.2d 272, 275 n. 7 (7th Cir.1980).
 
 
 14
 However, we note that this Court has encountered a very similar situation with another DES employee also discharged under the City of Chicago's 1984 Annual Appropriation Ordinance. In Fontano v. Chicago, 820 F.2d 213 (7th Cir.1987), a probationary employee for the City of Chicago's Department of Sewers protested his dismissal by claiming that he had a property interest in continued employment. Like Davis, he had been reclassified by the City from DES status to probationary status, and fired before his probationary term had expired. Whereas Davis supports his claim of a protected property interest on the basis of an alleged long-standing custom, Fontano argued that his change of status, the City's memorandum which promised two evaluations of his work performance, and the Municipal Code's provision for a merit system of employment created his property interest. He argued that a mutually explicit understanding existed that probationary employees would not be fired except for cause. We rejected his claim. We found that "nowhere in the ordinance, the rules or the memorandum are PCS [Probationary Career Service] employees afforded procedural safeguards prior to discharge." Id. at 216.
 
 
 15
 In adjudicating Davis' claim, the District Court similarly determined that procedural safeguards were not required. It found that the Appropriation Ordinance explicitly foreclosed reliance on any unwritten practice or policy to further restrict the City's ability to dismiss its probationary employees. The Ordinance itself states that:
 
 
 16
 Employees holding positions in the Department Employment Service, except seasonal employees, immediately prior to the adoption of this ordinance shall continue in their respective positions without further examination, until separated from their positions as provided by Ordinance or Rule.... [A]ny such employee discharged during this probationary period shall be presented by the Commissioner of Personnel with a written statement of the reason for such discharge.
 
 
 17
 The Commissioner of Personnel duly complied with the Appropriation Ordinance. He gave Davis formal notice of the reasons for his discharge in his July 3, 1984 letter to Davis.
 
 
 18
 Although the Municipal Code explicitly requires a hearing and dismissal procedures consistent with the requirements of due process of law for career service employees, Mun.Code Sec. 25.1-5, similar procedures were not provided for probationary employees. The only dismissal provision pertaining to such employees, Personnel Rule IX, Section 3, merely required that the Commissioner of Personnel be notified in writing of the discharge.
 
 
 19
 The District Court properly concluded that under these circumstances even a well-established policy would not support a legitimate expectation of continued employment with the City. The Appropriation Ordinance explicitly engrafts only the additional restrictions on dismissal provided by the Municipal Code and Personnel Rules, but neither of these statutes accords procedural due process rights to probationary employees. While custom or policy may be used to supplement the interpretation of a statute, it cannot be used to supplant the meaning of the statute itself. See McElearney v. University of Illinois, 612 F.2d 285, 290 (7th Cir.1979) (adopting opinion of district court). In interpreting other Illinois statutes with similar provisions for the removal of probationary public employees, this Court has refused to require due process procedural safeguards where the statutes themselves did not contain such a requirement. In Webster v. Redmond, 599 F.2d 793 (7th Cir.1979), cert. denied sub nom. Webster v. Board of Educ., 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980), we dealt with similar provisions in the Illinois School Code pertaining to the dismissal of probationary teachers and principals. Under the Code, the general superintendent was merely required to submit his written recommendations and reasons for dismissal before he could discharge a probationary employee. Id. at 800. Since the statute did not require due process procedural safeguards such as a hearing in order to fire probationary teachers, this Court refused to construe the Code as conferring a property interest in promotion under the due process clause.
 
 
 20
 Although on the facts of this case we need not reach the basis that the district court relied on to grant summary judgment, we note that if probationary employees were entitled to due process safeguards before they could be dismissed, they would be enjoying de facto civil service tenure. The Appellate Court of Illinois has duly noted that "a probationary employee has a right not to be discharged except according to law.... This is not the same as saying that a probationary employee has a right not to be discharged except after an opportunity to be heard." Vadala v. Civil Service Board, 51 Ill.App.3d 231, 9 Ill.Dec. 301, 366 N.E.2d 558 (1977) (citations omitted).
 
 CONCLUSION
 
 21
 Because the petitioner failed to substantiate his claim that a long-standing custom or policy existed mandating for-cause dismissal procedures for probationary foremen, we find that no genuine issue of material fact exists. The defendants were entitled to summary judgment. The District Court properly granted summary judgment, and we
 
 
 22
 AFFIRM.
 
 
 
 [1]
 We note that the plaintiff-appellant filed his complaint on January 3, 1985. After the defendants' motion for an extension of time was granted, the defendants filed their notice of motion to strike and dismiss or in the alternative for summary judgment on February 13, 1985. On March 6, 1985, the plaintiff filed his response to the defendants' motion. On March 21, 1985, the defendants filed their motion to strike and dismiss the amended complaint or in the alternative for summary judgment. The District Court did not rule on the defendants' motion to dismiss until July 24, 1985. In short, the plaintiff had almost seven months in which he could have asked for a continuance in order to conduct additional discovery, but he failed to do so. In light of this factual scenario, Davis' contention lacks merit