**Frances B. SMITH, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, A Body Politic, et al., Defendants–Appellees.**

**No. 87–1681.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1988.

Decided July 22, 1988.

William Eugene Holland, Mitchell Williams Holland & Rux, Chicago, Ill., for plaintiff-appellant.

Mary Denise Cahill, Bd. of Educ., City of Chicago, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Frances Smith filed suit in district court, claiming that the defendants, the Chicago Board of Education and various officials associated therewith, violated her due process and equal protection rights when she was demoted from her employment position as an Administrative Assistant III to a School Clerk I with the Board. At trial, the district court granted the defendants' motion for a directed verdict at the close of the plaintiff's case, and she appeals. We affirm.

## I. *The Facts*[1]

Smith began her employment with the Chicago Board of Education ("the Board") on October 11, 1965, as a probational Career Service employee in the position of School Clerk. After serving the probationary period of one year, she was certified for that position.

According to the testimony of Audry Ongman, the head of the Career Service personnel of the Board, the Board utilizes various status categories for its Career Service employees, three of which are: (1) temporary (or provisional) employees; (2) Career Service probational employees; and (3) Career Service certified employees. Temporary employees are those who have not taken, or been qualified by, an examination given by the City of Chicago. Once an employee has passed the examination, his or her name is placed on a general employment list maintained by the City of Chicago of eligible candidates qualified for employment in any department of the City or in the Chicago public schools.

A candidate selected from the general employment list who is assigned to a Career Service position becomes classified as a Career Service probationary employee and is subject to Rule 9, Section 1 of the City of Chicago's personnel rules. This rule provides, "All persons appointed to career service positions from general employment lists shall serve a probationary period of one year except that the Commissioner of Personnel may establish a probationary period of less than one year, as specified in the examination announcement." The purpose of the probationary period is two-fold. Ongman explained that it provides an opportunity for the depart-

---

1. Neither party on appeal has offered a particularly cogent or complete set of facts in its brief. In cases such as this one when we are reviewing a district court's grant of a motion for a directed verdict, our standard is "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when reviewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985). In light of this standard, we present the facts of this appeal as gleaned from the appellant's brief, to the extent they are relevant to the resolution of the issues on appeal.

ment head to counsel, guide, observe, and evaluate the employee. James Mahoney, the Executive Deputy Superintendent of the Chicago public schools, testified that the probation period also enables the Board to remove newly promoted persons who are incapable of performing the position to which they were elevated.

In addition to general employment lists, the City of Chicago also maintains a promotional list. Ongman explained that unlike an employment list, an employee on a promotional list must have previous experience in a lesser title or category before being promoted. Moreover, there is a distinction concerning probation periods for certain promotional list employees in the Board's handbook for Career Service employees, which provides, "If an employee has earned career service status and is subsequently staffed in a new career service position from a promotional list, the employee does not have to undergo another probational period for the new career service position." Ongman further testified that promotional lists are only utilized for engineering positions.

After completing the probation period, an employee attains Career Service certified status. An employee who has achieved this status is afforded certain privileges not available to temporary or probational employees. Chief among these privileges is the ability to displace the person in the system with least seniority if the certified employee loses his or her position for whatever reason and there are no other vacancies.

In June 1981, plaintiff-appellant Smith was promoted to the position of Administrative Assistant ("AA") I as a temporary or provisional employee. Because the AA position was newly created, the City had not conducted any examinations for it and thus no general employment lists existed from which probational employees could be selected. In July 1982, the City offered examinations for the position titles of AA I and AA II for the first time. Smith passed both exams and was appointed as a probational employee to the AA I position in August 1982.

Smith testified that in connection with the July 1982 AA exams, she spoke with Anita Gallardo, a personnel assistant in the Board's Bureau of Career Service Personnel, who told Smith that those persons who were presently functioning in a position classified as AA "would simply have to go through the process of application" and "that these persons would then be automatically certified in the positions in which they were functioning." According to Smith, Gallardo also told her that Dr. Joseph Lee, the District Superintendent of the district in which Smith worked provisionally as an AA I, would merely have to write a letter specifically asking that Smith be certified and assigned to the position in which she was already functioning in his district. Dr. Lee did write such a letter, and Smith introduced it into evidence at trial.

In January 1983, Smith was probationally appointed to an AA II position, five months after her probational appointment to the AA I position and seven months shy of completing her one-year probationary period for certified status in the AA I position. At the time of her promotion to the AA II position, Smith was working for Dr. Benjamin Williams, the Associate Superintendent of Chicago's Board of Education Office of Equal Educational Opportunity ("OEEO"). Williams placed Smith on the office "leadership team," which consisted primarily of bureau heads including Dr. Nelvina Brady, the Associate Superintendent of Schools. Smith's duties on the team included keeping minutes of the meetings, disseminating information to members of the team and support staff, and special assignments from time to time. Williams and Smith testified that Brady and other personnel objected to Smith's participation on the team because she was a clerical worker, as opposed to a professional.

Williams also assigned Smith the task of preparing and implementing new payroll procedures, including auditing time sheets. Brady informed Smith that before Smith arrived, it was part of her responsibilities to sign staff payroll reporting forms. Smith responded that she was acting under

the direction of Williams and that Brady should discuss the matter with him. Brady also admitted at trial that she objected to the new procedures which Smith had implemented, specifically the requirement that professionals had to sign in and out of the office.

After passing the appropriate examination in February 1983, Smith was appointed to an AA III position in June 1983, five months after being appointed to the AA II position and seven months short of completing her one-year probation for certified status as an AA II. In August 1983, Williams was reassigned to the General Superintendent's office, and Brady became acting Associate Superintendent of OEEO. Brady announced that her current secretary, Paulette Cross, would be serving as her secretary in her new position, and furthermore Cross would act in the capacity of office manager.

Shortly thereafter, Smith was placed on-loan from OEEO to continue working with Williams at the suggestion and approval of Ruth Love, the General Superintendent for the Board of Education. In November, Brady became concerned that Smith continued to remain on the OEEO payroll because Brady had no knowledge of the work Smith was performing. Brady testified that she had no contact with Smith and that Smith was not accountable to her.

Williams realized the temporary nature of the clerical position occupied by Smith, and he contacted Ongman to discuss the situation. Ongman agreed to assist Smith in attempting to secure another administrative position. Ongman informed Smith that her position would terminate on December 31, 1983, and Ongman encouraged Smith to interview for other available positions. No comparable position was available when Smith's position was phased out, and at this time Smith was demoted to

School Clerk I in January 1984, the only position in which she was certified.

Smith filed suit in district court, alleging that the Board and its personnel violated her due process and equal protection rights under the Fourteenth Amendment when she was demoted from the AA III position to School Clerk I.[2] At trial after the presentation of Smith's case in chief, the district court granted the defendants' motion for a directed verdict. The court held that Smith failed to establish any property right under the due process clause in her AA positions and further concluded that Smith failed to demonstrate any equal protection violation.

## II. *The Due Process Claim*

On appeal, Smith raises two due process arguments. She contends that the Board's actions were arbitrary and capricious, thus depriving her of substantive due process.[3] She also claims that the Board's action in demoting her from AA III to the School Clerk I position violated her procedural due process rights.

■ In determining whether an individual is entitled to due process, either substantive or procedural, he or she must first establish the existence of a liberty or property interest. *Jeffries v. Turkey Run Consol. School Dist.*, 492 F.2d 1, 3–4 (7th Cir. 1974). As the Supreme Court explained in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

"To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

* * * * * *

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are de-

---

2. After suit was filed, Smith was appointed and subsequently certified in the AA III position, though she claims she did not fulfill the requisite year's probation.

3. In her opening brief, Smith also appears to argue that the rules requiring a one-year proba-

tionary period prior to certification lacked a rational basis. In her reply brief, however, Smith assures us that she is not challenging the constitutionality of the rules themselves. Reply Brief at 18.

fined by existing rules or understandings from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits."

*Id.* at 577, 92 S.Ct. at 2709.

Smith asserts that she had a legitimate expectation of job security rising to the level of a property interest protected by the due process clause of the Fourteenth Amendment. She does not claim that this property interest arose out of any contract or statute. This, however, is not fatal to her claim since the Supreme Court, in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), recognized the possibility of *"de facto"* tenure which could give rise to a property interest. The Court stated that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* at 601, 92 S.Ct. at 2699.

■ Smith initially contends that she was entitled to *de facto* job security because she was a superior employee who had passed the examinations for all three AA positions and had worked for two and one-half years as an AA. This argument fails because courts have time and again held that mere job longevity or serial reemployment does not establish a legitimate property interest expectation of continued employment. *See Hadley v. County of DuPage*, 715 F.2d 1238, 1244 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *Grimes v. Eastern Illinois University*, 710 F.2d 386, 387 (7th Cir.1983); *Smith v. Board of Educ. of Urbana School Dist.*, 708 F.2d 258, 264 (7th Cir.1983).

■ Smith also claims that she possessed a property interest because a personnel clerk, Gallardo, told Smith that she was certified in the AA category. We are at a loss to understand how this statement by a Board employee can establish a property interest in continued employment, however, in view of the fact that there is no evidence in the record demonstrating that any Board employee had the authority to bind the Board to a contract. *See Hadley*, 715 F.2d at 1242. To create a justifiable and reasonable expectation of job security, and thereby establish a property interest, there must be a mutually explicit understanding between the parties or a party with authority to bind the Board. *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699. Because there was no evidence presented to prove that the Board was bound by a mere statement from one of its employees, the Board could not be a party to any mutually explicit understanding; thus, any claim of entitlement to public employment based on this mere statement was, at best, only a unilateral expectation which is insufficient to support a property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.[4]

■ Finally, Smith submits that she had a property interest in completing the one-year probationary period. She argues that she had a contract with the Board to complete her probationary period as a condition subsequent to her appointment to the AA III level in June 1983. We rejected this same argument in *Fontano v. City of Chicago*, 820 F.2d 213 (7th Cir.1987) (per curiam), holding that a probationary Career Service employee does not have a property interest in his job entitling him to due process. *Id.* at 215. To accept Smith's argument would require us to overrule *Fontano*, and we reject this invitation to do so.

---

**4.** Smith also avers that a jury could have concluded that she reasonably believed that she was being promoted from a "promotional list" and thought that the handbook rule allowing promotional list employees to forego probation once they achieved career status if they are promoted applied to her. As Smith notes in her brief, neither the promotional list nor the general employment list was introduced at trial. The only evidence defining a promotional list was Ongman's testimony that it applied solely to engineers. Even assuming Smith's mistaken belief to be reasonable, it created nothing more than a unilateral expectation of continued employment on her part as there was no evidence to establish that anyone but Smith thought that she had been hired from a promotional list; hence, it created no property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

Thus, Smith has failed to establish a mutually explicit understanding of entitlement to the benefit of continued employment with the Board necessary in order to give rise to a property interest, and therefore has failed to establish *de facto* tenure under *Perry*. Smith's subjective expectation of continued employment, if any, was purely unilateral and as such is insufficient to state a property interest protected by the Fourteenth Amendment. *See Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The granting of the directed verdict was proper against Smith on her claim of a property interest in continued employment with the Board as an AA.

### III. *The Equal Protection Claim*

 Smith contends that she was denied equal protection of the laws in violation of her Fourteenth Amendment right by the Board's arbitrary and irrational interpretation of its personnel rules in classifying her as a probationary employee, and that this conduct of the Board was intentional and purposeful. She maintains that there was no evidence to establish that the Board's classification of her as "probationary" in the AA III position furthered any legitimate governmental interest, and that the Board's interpretation of its rules as applied to her situation lacks a rational basis.

At trial, however, Ongman testified that the purpose of probation was to allow the department head an opportunity to counsel, guide, observe, and evaluate a newly promoted employee. Moreover, Mahoney testified that the probation period enables the Board to remove newly promoted persons who are incapable of performing the position to which they were elevated. Thus, we need not consider the second part of Smith's argument concerning the Board's motive in demoting Smith because she failed to establish that her classification as probationary furthered no legitimate interest, and hence we conclude that there was no equal protection violation in this case.

### IV. *Conclusion*

The decision of the district court is

AFFIRMED

CUDAHY, Circuit Judge, concurring:

I agree that the majority reaches the correct result through an analysis that responds to the somewhat unusual and opaque arguments of the parties. That this is a procedural due process case requiring the existence of a property interest seems clear. That we are dealing with a problem in substantive due process seems much less clear, although the plaintiff must, in any event, lose under a substantive due process analysis. The equal protection claim perhaps offers more promise than the others because of the apparent disparity in the treatment of "rapid advancers" and those who linger to serve their required probation. This does not, however, seem to be quite the argument that the plaintiff makes.

Smith was the holder of what amounts to a "battlefield commission." She advanced through the ranks so rapidly that she was never left in one place long enough to complete a probationary period. Under the rules she points to no deprivation which can be deemed of constitutional dimension. But the rules, even if constitutional in their application, seem clearly deficient in allowing this bizarre scenario to unfold. It is certainly not evident why, with each promotion, an employee receives no credit for probationary time already served, to be applied to some lower classification level.