859 F.2d 467
 3 Indiv.Empl.Rts.Cas. 1483
 Lillie COMMON, Plaintiff-Appellant,
v.
Investigator Willie J. WILLIAMS and Phillip T. Hardiman, in
his official capacity as Executive Director of the
Cook County Department of Corrections,
Defendants-Appellees.
 No. 87-3151.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 2, 1988.
Decided Sept. 29, 1988.
As Amended Oct. 3, 1988.
Rehearing and Rehearing In Banc Denied Nov. 10, 1988.
 
 Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff-appellant.
 Nancy Martin, Cook County State's Attys. Office, Chicago, Ill., for defendants-appellees.
 Before POSNER, COFFEY and KANNE, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Lillie Common appeals from the district court's order entering summary judgment in favor of defendants, Cook County Department of Corrections Investigator Willie J. Williams and Cook County Department of Corrections Executive Director Phillip T. Hardiman in a civil rights action brought by Common against Williams and Hardiman under 42 U.S.C. Sec. 1983. Common claims that Williams and Hardiman denied Common her procedural due process right to a hearing prior to her alleged constructive discharge. We affirm.
 
 
 2
 * The Cook County Department of Corrections employed Lillie Common as a cadet corrections officer on February 19, 1985. Following a ten week training period at the Sheriff's Academy, Common was sworn in as a Deputy Sheriff on July 13, 1985. She was assigned as a corrections officer in the RTU Unit, which houses patients on psychotropic drugs. Common served as a corrections officer until December 24, 1985. During that period Common received a warning letter on excessive absenteeism dated August 22, 1985. Common was also absent on a number of days during the month of October 1985. After working on December 24, 1985, Common began an extended period of absence from employment because of illness. Between December 24, 1985, and March 25, 1986, Common missed all but a portion of one day.
 
 
 3
 On March 26, 1986, Cook County Department of Corrections Investigator Willie J. Williams went to Common's home. According to Common, Williams stated that he had been sent by Cook County Department of Corrections Executive Director Phillip Hardiman to take possession of Common's badge and shield and to accept her resignation. Common stated that Williams did not indicate the reason why her resignation was requested at this time. However, an April 8, 1980, letter from Hardiman to Common's attorney reveals that Hardiman found that Common's unexplained absenteeism record was unacceptable. Williams furnished Common with a draft resignation form. Common claims that after she stated she was unwilling to resign, Williams threatened to call the police. Common also states that Williams told her "they would fire [her] from [her] job and that would go on [her] file as being fired." Common contends she signed a resignation form and yielded her badge and shield "under duress" five or ten minutes after Williams' arrival at her house.
 
 
 4
 Common uses correspondence between her attorney and Cook County Department of Corrections Executive Director Phillip T. Hardiman following her resignation to support her position that she was entitled to a hearing prior to her termination. In a letter to Common's attorney dated April 8, 1986, Hardiman made his statement that Common's unexplained absenteeism was unacceptable. He further explained:
 
 
 5
 "As you are aware, no employer can tolerate such actions. This was explained to Ms. Common by the investigators. The Department's only alternative was to place Ms. Common before the Sheriff's Merit Board for termination. Employees in this position are always given the opportunity to resign as to not blemish their employment record. Ms. Common voluntarily chose this alternative, she was not forced."
 
 
 6
 (Emphasis supplied). This position was reaffirmed in a deposition in which Hardiman stated that "we felt that we had a very good case against Ms. Common. It made no difference to us one way or the other, whether she resigned or went before the Merit Board." Common also points to Hardiman's statements concerning another employee, Officer Betty Foshee. Common's attorney claimed, in a letter to Hardiman, that Foshee had been improperly treated as a probationary employee following her return to work from an injury related disability. Common's attorney's letter notes that Foshee had left work on the day she was scheduled to complete her probation and had apparently returned to work thereafter. In a reply dated March 11, 1986, Hardiman stated:
 
 
 7
 "The Department does not have the ability to prevent an officer from not becoming a merit employee after one (1) year of service. She has all the rights and benefits of a merit employee. The only difference between a probationary employee and a merit employee is that the only body that can terminate or reduce in rank a merit employee is the Sheriff's Merit Board, a probationary employee can be terminated by the Department."
 
 
 8
 Common claims that the defendants' actions constituted a constructive discharge in violation of her procedural due process right to a pre-termination hearing. Common's claim is based upon the facts that she resigned in response to Investigator Williams' threats and that the Department of Corrections had a policy of compelling employee resignations to avoid hearings required under the due process clause. The district court granted summary judgment for the defendants on the basis that Common had failed to prove an essential element of her case: "a constitutional property interest in continued employment at the Department of Corrections which entitled her to a pre-termination hearing."
 
 II
 
 9
 It is necessary to briefly note one minor procedural point before addressing the merits of Common's claim. Defendants objected to the district court's consideration of letters from Hardiman to Common's attorney on the basis that these letters were not properly authenticated. It is unclear from the record whether the district court ruled on this objection or considered the documents. It is further unclear whether these letters were admitted as exhibits to Hardiman's deposition, which could have made their consideration appropriate. See Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 365 n. 14 (7th Cir.1987) (per curiam) ("A district court in a federal summary judgment proceeding, may consider materials beyond the pleadings, including exhibits to affidavits and exhibits made a part of a deposition record"); Martz v. Union Labor Life Insurance Co., 757 F.2d 135, 138 (7th Cir.1985) ("The facts must be established through one of the vehicles designed to ensure reliability and veracity--depositions, answers to interrogatories, admissions and affidavits"). In any event, it is unnecessary for us to determine this question or to remand it to the district court for its determination, for the consideration of these letters will not alter our decision on the merits of this case.
 
 III
 
 10
 Summary judgment is properly entered in favor of a party when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof. As the Supreme Court observed in Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553, 91 L.Ed.2d 265 (1986):
 
 
 11
 "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
 
 
 12
 The district court properly recognized that Common's claim turned upon her possession of a procedural due process right to a pre-termination hearing. In order to demonstrate this essential element of her case she was required to show that she had "a constitutional property interest in continued employment at the Department of Corrections."[1]
 
 
 13
 We have discussed whether an alleged "property" interest may be found under the due process clause in various factual contexts. See, e.g., Patterson v. Portch, 835 F.2d 1399, 1404-1405 (7th Cir.1988); Fleury v. Clayton, 847 F.2d 1229, 1231-1233 (7th Cir.1988); Yatvin v. Madison Metropolitan School District, 840 F.2d 412, 416-417 (7th Cir.1988). A useful starting point in determining whether Common possessed a constitutionally protected "property" interest in continued employment is the United States Supreme Court's decision in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), which explained:
 
 
 14
 "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings from an independent source such as state law--rules or understandings that secure benefits and that support claims of entitlement to those benefits."
 
 
 18
 "[P]roperty interests may be a matter of statutory entitlement," or "they may also arise from mutually explicit understandings." Davis v. City of Chicago, 841 F.2d 186, 188 (7th Cir.1988) (citations omitted). In order to provide parties with guidance concerning the type of evidence of custom or policy which can be utilized to demonstrate a "mutually explicit understanding," the Supreme Court has pointed to the analogous doctrines of "implied contracts" arising from parties mutual understandings and of the "common law of a particular plant' that may supplement a collective-bargaining agreement."[2] See Jago v. Van Curen, 454 U.S. 14, 18-20, 102 S.Ct. 31, 34-35, 70 L.Ed.2d 13 (1981); Perry v. Sindermann, 408 U.S. 593, 601-602, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972). A party utilizing such evidence of custom or policy to establish a mutually explicit understanding capable of giving rise to a legitimate claim of entitlement in continued employment, must demonstrate "an 'expectation ... that was legally enforceable', a mutually binding obligation." Upadhya v. Langenberg, 834 F.2d 661, 665 (7th Cir.1987) (citations omitted). This expectation must be something which " 'is securely and durably yours under state (or ... federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.' " Yatvin, 840 F.2d at 417 (quoting Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983)). It is clear that "a merely subjective and unilateral expectancy is not protected by due process." Davis, 841 F.2d at 188 (citation omitted).
 
 
 19
 Our previous cases construing the "property" interest in continued employment enjoyed by certain Illinois public employees have found a distinction between probationary employees, who do not possess such an interest, and employees who have completed their probation period, who do enjoy this right. See Fontano v. City of Chicago, 820 F.2d 213, 214-216 (7th Cir.1987); Webster v. Redmond, 599 F.2d 793, 799-801 (7th Cir.1979). As the district court properly noted, this same distinction applies to deputies employed by the Cook County Department of Correction. See Common v. Williams, No. 86 C 5169, slip op. at 5 (N.D.Ill. November 30, 1987) (citing Ill.Ann.Stat. ch. 125, p 160 (Smith-Hurd, Supp.1987)). Thus, Common's entitlement to a "property" interest in continued employment with the Department of Corrections turns upon whether or not she had, in fact, completed her probationary period under state law.
 
 
 20
 Two Illinois statutes control this question. The first, Ill.Rev.Stat. ch. 125, p 160, provides, in pertinent part, that: "The rules and regulations of a [Merit] Commission shall provide that all initial appointees shall serve a probationary period of 12 months during which time they may be discharged at the will of the sheriff." The second, Ill.Rev.Stat. ch. 125, p 58, similarly provides, in pertinent part: "All appointees shall serve a probationary period of 12 months and during that period may be discharged at the will of the sheriff." The parties dispute how these statutes apply to Common. Common contends that she had completed the probationary period at the time of her resignation, because her employment had begun more than 12 months before that date. Defendants assert that Common had not completed the probationary period, because she had not actually been physically present at her work place during the entire 12-month period. Specifically, Common had worked only part of a single day in the period between December 24, 1985, and the date of her resignation, March 26, 1986. Because both parties' interpretations probably are permissible, the face of the statute fails to support an expectation of continued employment.
 
 
 21
 The Illinois case law relevant to public employee probationary periods, however, severely undercuts Common's claim of an expectation of continued employment. In Potratz v. State Department of Law Enforcement, 154 Ill.App.3d 682, 107 Ill.Dec. 159, 506 N.E.2d 1050 (1987), it was determined that a public employee's probationary period began when the employee physically reported for work rather than the earlier date when he received a letter appointing him to the position. The court stated:
 
 
 22
 This court has previously discussed the purpose of a probationary period of employment in Kaylor v. Bradley (1963), 43 Ill.App.2d 145, 148, 193 N.E.2d 103, 104. There it was explained:
 
 
 23
 The purpose of a probationary period is to give an opportunity to sift out employees not fit or suited to their employment. By the very nature of things, this would contemplate an opportunity on the part of the appointing official to observe the employee while actively at work during the entire period in order to determine whether he is capable of promoting the good of public service.
 
 
 24
 In order to effectuate the purpose of probationary employment, it must begin when actual work by an employee begins.[3]
 
 
 25
 While the Illinois cases do not address the precise question of whether an employee completes her probationary period when she is absent for two months of this period because of illness, their rationale clearly requires a conclusion that such an absence would preclude an employee from completing a probationary period. To hold otherwise would be to ignore the requirement of actual presence at the work place that the Illinois courts have emphasized. Thus, the statutes, read in light of the case law, clearly dictate that Common did not enjoy a constitutionally protected "property" interest in continued employment at the Department of Corrections.
 
 
 26
 Common seeks to avoid this conclusion by asserting that certain statements and practices of Department of Corrections Executive Director Phillip Hardiman created a "mutually explicit understanding" which could support an expectation of continued employment. There are two major problems with this position.
 
 
 27
 First, Hardiman appears to lack the authority to vary the means of satisfying a probation period that is established by explicit state statutory law. We have clearly held that informal assurances are not capable of varying formal provisions of state law. See McElearney v. University of Illinois, 612 F.2d 285, 290 (7th Cir.1979) (per curiam) (Informal assurances of other faculty members concerning continued employment do not take precedence over formal university statutes promulgated under authority of state law). See also Batterton v. Texas General Land Office, 783 F.2d 1220, 1223-1224 (5th Cir.1986) (Informal understandings and customs contrary to a state statute cannot be the source of a property right in continued employment). If Hardiman's words and actions, allegedly based upon a conclusion that Common had completed her probationary period, could be interpreted to permit the completion of a probationary period with less than twelve months on the job, they could well have been contrary to the very language of the Illinois public employee probation statutes, as well as the interpretation the Illinois state courts have given these statutes. In addition, irrespective of the correctness of Hardiman's interpretation of the probation statutes, Hardiman probably lacked the power to bind Cook County to any particular interpretation of the required probationary period. It is clear from Ill.Rev.Stat. ch. 125, p 160, that merit commission rules are to provide for a 12 month probationary period. If Hardiman felt that Common had completed the probationary period, he could have submitted her case to the merit commission. However, the merit commission presumably would have been free to interpret its rules to conclude that Common had not completed her probationary period and thereby deny any hearing.[4] Accordingly, Common cannot derive a "property" right in continued employment from actions or statements of an individual who lacks the authority to bind the County. See Smith v. Board of Education, 853 F.2d 517, 521 (7th Cir.1988) ("To create a justifiable and reasonable expectation of job security, and thereby establish a property interest, there must be a mutually explicit understanding between the parties or a party with authority to bind the Board"); Hadley v. County of Du Page, 715 F.2d 1238, 1242 (7th Cir.1983) ("No property interest can arise from [these] assurances since the County Board is not bound by the unofficial acts and statements of its individual members, and therefore cannot be a party to any mutually explicit understanding").
 
 
 28
 Second, even if Hardiman possessed the authority to conclude that Common completed her probationary period, there is no clear evidence that he actually did so. Common appears to rely upon the doctrine of "industrial common law," mentioned in Perry v. Sindermann, as the basis for her claim that Hardiman's past practices provided her with a reasonable expectation of continued employment. However, the evidence Common marshalls in support of this claim is inadequate to demonstrate a property right to continued employment. She has only referred to the case of one other employee, a showing hardly sufficient to demonstrate a clear custom or usage. Even that employee's situation is clearly distinguishable, as it does not present the extensive length of absence from work found in Common's case. The other employee, Betty Foshee, was only one day short of completing her probationary period when she went out with an injury and thereafter returned to work. Thus, Foshee probably would have completed her probationary period, even under an interpretation requiring actual service on the job, because the employer clearly had the opportunity to physically observe her at work for an entire year. In addition, the actions Hardiman took in Common's case, standing alone, do not establish a custom or usage which can give rise to a reasonable expectation of continued employment, especially in light of the limitations on Hardiman's authority to bind the County discussed previously and the fact that Common's resignation effectively preempted an actual determination by public officials concerning the proper means to effectuate Common's termination.
 
 
 29
 In sum, Illinois statutes, and Illinois state court decisions construing these statutes, do not provide Lillie Common with an expectation of continued employment at the Department of Corrections. This conclusion is not altered by the words and actions of Hardiman, which were incapable of creating the "mutually explicit understanding" necessary for a "property" right in continued employment to be established. In this context Lillie Common has failed to meet the burden of showing that an expectation in continued employment was something which was "securely and durably [hers] under state ... law." Yatvin, 840 F.2d at 417. Since this "property" right is an essential element of Common's claim, the district court properly entered summary judgment in favor of the defendants. The decision of the district court is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Common makes no allegation that she was deprived of a constitutionally secured "liberty" interest
 
 
 [2]
 Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (citing United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960))
 
 
 [3]
 107 Ill.Dec. at 161, 506 N.E.2d at 1052 (emphasis in original). Kaylor was a case in which the Illinois court rejected a contention that credited annual leave time should count toward the completion of a probationary period
 
 
 [4]
 Indeed, the merit commission may have been statutorily required to deny such a hearing because: "The authority of the merit commission must either arise from the express language of the Sheriff's Merit System Act, or devolve by fair implication and intendment from the express provisions of the Act as an incident to achieving the objectives for which the commission was created." Schalz v. McHenry County Sheriff's Department Merit Commission, 113 Ill.2d 198, 100 Ill.Dec. 553, 555, 497 N.E.2d 731, 733 (1986). It is clear from Ill.Rev.Stat. ch. 125, p 160 that merit commission termination procedures are not to apply to employees during the 12 month probationary period