**Kenneth L. WILLIS, Plaintiff,**

**v.**

**Jose CLEMENTE, M.D. et al., Defendant.**

**No. IP 93–10 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 29, 1994.

Patrick H. Stern, Indianapolis, IN, for plaintiff.

Anthony W. Overholt, Deputy Atty. Gen., Indianapolis, IN, for defendants.

ENTRY

BARKER, Chief Judge.

This matter is before the Court on Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion is granted.

I. Background

Plaintiff Kenneth L. Willis seeks damages under 42 U.S.C. §§ 1983, 1985, and 1986 for the substandard medical treatment that he alleges he received in connection with a hand injury he suffered while incarcerated at the Indiana State Reformatory ("ISR") in Pendleton, Indiana. On June 6, 1991, Plaintiff injured his left hand and was taken to the ISR hospital. A nurse at the hospital gave Plaintiff an ice pack and an ace bandage and instructed Plaintiff to sign up for sick call. Plaintiff did so and the next day Plaintiff was seen at the ISR hospital by Defendant Jose Clemente, M.D. Clemente prescribed ibuprofen, ordered x-rays of Plaintiff's left hand to be taken, and directed Plaintiff to return to work in the mean time. Clemente also prescribed Plaintiff to soak his hand in a solution and exercise it for a few days.

Plaintiff proceeded from Clemente's office directly to have the ordered x-rays taken by

Defendant Maurice "Moe" Goldman, a radiographer, but not a medical doctor, working at ISR. Goldman filmed and developed the prescribed x-rays and sent them to Robert D. Tarver, M.D., a radiologist at Wishard Hospital in Indianapolis, in order for the x-rays to be read. Dr. Tarver, who is not a defendant in the instant case, agreed with Clemente that there were no broken bones in Plaintiff's left hand, and filed a report stating such.

From June 10, 1991 until June 24, 1991, Plaintiff was housed at the Marion County Jail and the Clark County Jail.[1] Plaintiff's hand continued to be swollen and painful. According to Plaintiff, the Marshals transporting him between the correctional facilities as well as the corrections officers at the facilities questioned him about the condition of his hand. On June 13, 1991, a Clark County official ordered that Plaintiff be taken to Clark County Memorial Hospital to have his hand treated. Clark County Hospital personnel determined that Plaintiff's fourth metacarpal in his left hand was broken. On June 14, 1991, Plaintiff was transported to the office of Dr. William Gossman, a private orthopedic specialist who set Plaintiff's broken bone and placed a cast on Plaintiff's hand with the instructions that the cast should be removed in three to four weeks, with physical therapy to be initiated immediately thereafter so that the knuckle would return to its proper alignment and Plaintiff could regain full use of his hand. On the day that Plaintiff returned to ISR, June 24, 1991, he reported to the infirmary and informed medical professionals who are not parties to the instant action the instructions that he received for removing his cast and physical therapy.

On July 1, 1991, Plaintiff served Dr. Clemente with a notice of tort claim under the Indiana Tort Claims Act for the alleged substandard medical treatment that Plaintiff received on his hand. Plaintiff alleges that after the tort claim notice was served, the Defendants Clemente, Goldman, and Mauro Chavez, M.D., entered into covert agreements with each other to destroy any damaging evidence and to "harass, intimidate, and threaten" Plaintiff into terminating any legal actions against them. Plaintiff contends that on July 12, 1991, Chavez threatened Plaintiff that until Plaintiff changed his story about the events in question, Chavez would not remove the cast. On July 18, 1991, Plaintiff was asked to report to the infirmary where Chavez asked Plaintiff to go to Wishard Hospital Emergency Room to have the cast removed. Plaintiff refused.

Throughout this time, Defendant Neil Potter, Administrative Assistant to the Superintendent at ISR, solicited information from Plaintiff concerning the injury to his left hand and the allegedly substandard treatment he received. Plaintiff responded to Potter by meeting with him and by supplying Potter with written materials, including a written account of Willis' story as it had been told to his work supervisor, Kelly Combs (the law library supervisor). In a meeting that took place on July 19, 1991, Potter informed Plaintiff that he would look into Plaintiff's accusations and that, in the mean time, Plaintiff should go to the Emergency Room at Wishard Hospital for the medical care of his wrist.

On July 22, 1991, Plaintiff was transported to the Wishard Hospital Emergency Room to have his cast removed. Plaintiff alleges that he was informed at Wishard that he would have to make an appointment with an orthopedic specialist for a later date to have the cast removed because that service was not performed in the Emergency Room. The next day Plaintiff reported to the infirmary at ISR to be treated by a physician who was newly employed at ISR, Dr. Amaya. Plaintiff allowed Dr. Amaya to remove his cast. According to Plaintiff, Amaya was very critical of Goldman and when Chavez entered the infirmary, Chavez made some comments about Willis and his medical treatment.

Plaintiff's complaint consists of seven causes of action. Plaintiff's first two claims are against Clemente and Goldman, respectively, for violating the Eighth Amendment's prohibition against cruel and unusual punishment in the "deliberate indifference" they

---

1. Plaintiff was transported to and housed at these jails in connection with a court appearance. Plaintiff does not make any allegations regarding his medical care while outside of ISR.

exhibited to Plaintiff in the initial diagnosis and treatment of his injury. · The third· cause of action alleges that Clemente and Chavez' alleged harassment, intimidation, and threatening of Plaintiff, in connection with their attempt to get Plaintiff to change his story about his medical treatment, "constitute[d] an infringement of Willis' free speech rights and right to petition the government, as guaranteed by the First Amendment." The fourth cause of action claims that the actions of Clemente and Chavez, as alleged in the third cause of action, constitute a violation of Plaintiff's Eighth Amendment rights. The fifth cause of action claims that Chavez' alleged refusal to timely remove the cast and to allow Plaintiff to undergo the prescribed physical therapy constitute a violation of Plaintiff's Eighth Amendment rights. The sixth cause of action claims that Clemente, Chavez, and Goldman conspired to infringe Willis' "free speech rights and right to petition the government, as guaranteed by the First Amendment" when they allegedly removed and/or destroyed relevant evidence to this case. The seventh cause of action alleges that Potter, by knowing about all the acts alleged in the complaint but not doing anything to correct them, violated Plaintiff's First and Eighth Amendment rights.

Plaintiff claims that as a result of the Defendants' acts he has endured pain, suffering, and the permanent loss of some use of his hand. Plaintiff further alleges that his chances of continuing his career as a professional boxer are greatly diminished. Plaintiff requests the following in compensatory damages from the Defendants: $125,000 each from Clemente and Goldman; $25,000 from Chavez; and, $15,000 from Potter. Plaintiff also requests $10,000 from each of the Defendants in punitive damages.

## II. Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In passing on a motion for summary judgment, the judge's·role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d. 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

Defendants have moved for summary judgment on all claims in Plaintiff's complaint. Plaintiff's response and memorandum do not include any arguments in favor of his First Amendment claims or his claims against Defendant Potter. Therefore, Defendants are entitled to summary judgment on Plaintiff's third, sixth, and seventh causes of action. Fed.R.Civ.P. 56(c).[2]

The gist of Plaintiff's complaint is that inadequate medical treatment provided to him at a correctional institution rises to the level of cruel and unusual punishment under the Eighth Amendment. The state has a constitutional duty to attend to prisoners' medical problems, even when the problems are not of the state's creation. *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir. 1991) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). In order to prevail in a claim for inadequate medical treatment, a prisoner must show "deliberate indifference to serious medical needs." *Estelle,* 429 U.S.

---

2. Plaintiff did not file a "Statement of Genuine Issues" as required by S.D.Ind.L.R. 56.1. Therefore, on Defendants' assertions of the facts are largely uncontroverted for summary judgment purposes. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994). However,

because Plaintiff's version of the facts, even though it is not buttressed by a properly supported "Statement of Genuine Issues," leads to the same conclusion, Plaintiff's version of the facts is used throughout this Entry.

at 105, 97 S.Ct. at 291; *accord, Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *McGill*, 944 F.2d at 347; *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991).

" '[D]eliberate indifference' (in this circuit) is merely a synonym for intentional or criminally reckless conduct." *Salazar*, 940 F.2d at 238. Thus, the concept of deliberate indifference works as the functional equivalent of intent. *McGill*, 944 F.2d at 347. Deliberate indifference is evidenced by "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 291–92 (citations omitted). In order to be deliberately indifferent to an inmate's medical needs, medical officials must intend for the inmate to die or suffer grievously, or, knowing of a significant risk that the inmate will die or suffer grievously, be indifferent to that risk. *Salazar*, 940 F.2d at 238.

*Estelle* and its progeny have made clear that allegations that amount to no more than negligence or medical malpractice do not state claims under the Eighth Amendment: "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. At most, such a claim is for medical malpractice and the proper forum is a state court under that state's tort claims act. *Id.* at 107–08, 97 S.Ct. at 293. To state a claim under the Eighth Amendment, the medical treatment at issue must have an element of intent that rises above malpractice: it is not enough to be careless of the inmate's welfare, the officials must be indifferent of it; it is not enough to underestimate the severity of the injury, the officials must be "insufficiently interested in the inmate's health to take even minimum steps to guard against the possibility that the injury [is] severe." *Hughes*, 931 F.2d at 428.

The root of Plaintiff's dissatisfaction with his medical treatment is the alleged negligence of Clemente in not diagnosing Plaintiff's broken bone in his hand. Plaintiff concedes that x-rays were taken by someone (Goldman) qualified to do so. While Plaintiff alleges that Clemente relied on Goldman's interpretation of the x-rays, Plaintiff does not counter Defendants' evidence that an outside radiologist, Dr. Tarver, actually read the x-rays and determined that there were no broken bones. This is all a matter of negligent malpractice; Plaintiff conceded as much when he filed a notice to proceed against Clemente pursuant to the Indiana Tort Claims Act. Plaintiff raises no inference of intent or deliberate indifference.

Plaintiff's allegations concerning the medical treatment that followed his return to ISR after his broken bone had been set are unsubstantiated, even for summary judgment purposes, and raise no inference of intent or deliberate indifference. Although many of Plaintiff's claims center around a perceived plot to steal or destroy his medical records, Plaintiff has not once made a motion to this Court to compel the production of the records in question.[3] Furthermore, Plaintiff has conceded that the problems he had in having his cast removed are largely of his own creation. He chose not to let Clemente or Chavez remove his cast. He chose not to go to Wishard sooner. Therefore, nothing in Plaintiff's remaining claims rises above allegations of malpractice not actionable under the Eighth Amendment.[4]

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted.

It is so ORDERED.

---

**3.** Although Plaintiff initially filed this action *pro se*, he has been represented by counsel for over six months. Although Plaintiff has written letters to the Court about this discovery issue, he has been ordered to file a motion if appropriate. To date, no such motion has been filed. Defendants, on the other hand, on January 21, 1994, filed a "Notice of Compliance with Discovery Requests," and throughout this case Defendants

have maintained their position that the documents are available for inspection.

**4.** This is not to say that the actions of the ISR medical staff as alleged in the Complaint are acceptable. Rather, this is just to say that they are not appropriately addressed by the instant action.